**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:24cv61987

**MICHAEL BARKER,**
**RICHARD ANDREWS,**
**RYAN SHAPIRO,**
**LAMA ALSHAMI,**
**BRUNO BRITO DE OLIVEIRA,**

    Plaintiffs,

v.

**CAPITAL ONE FINANCIAL CORPORATION**
*d/b/a* **CAPITAL ONE,**

    Defendant.

_____/

**JURY TRIAL DEMANDED**

**INJUNCTIVE RELIEF SOUGHT**

**COMPLAINT**

Plaintiff Michael Barker, Richard Andrews, Ryan Shapiro, Lama Alshami, and Bruno Brito De Oliveira (collectively, the "Plaintiffs") sue Defendant Capital One Financial Corporation *d/b/a* Capital One ("Defendant" or "Capital One") for violations the Florida Consumer Collection Practices Act ("FCCPA").

**JURISDICTION AND VENUE**

1.    Jurisdiction of this Court arises under 28 U.S.C. § 1332, as the collective amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, Defendant is a citizen of Delaware, and Plaintiffs are citizens of Florida residing within this district.

2.    Venue in this District is proper because Plaintiffs reside here, Capital One transacts business here, and the complained conduct of Capital One occurred here.

**PARTIES**

3.    Plaintiff Michael Barker ("Barker") is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

4. Plaintiff Richard Andrews ("Andrews") is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

5. Plaintiff Ryan Shapiro ("Shapiro") is a natural person, and a citizen of the State of Florida, residing in Miami-Dade County, Florida.

6. Plaintiff Lama Alshami ("Alshami") is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

7. Plaintiff Bruno Brito De Oliveira ("Oliveira") is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

8. Capital One is a Delaware corporation, with its principal place of business located in McLean, Virginia.

## DEMAND FOR JURY TRIAL

9. Plaintiffs, respectfully, demand a trial by jury on all counts and issues so triable.

## ALLEGATIONS

### *ALLEGATIONS OF BARKER*

10. Barker is the debtor of an unsecured line of credit with an account number ending with 7492 (the "7492 Account").

11. At all times material, the 7492 Account was primarily used by Barker for personal, family, or household purposes.

12. Capital One is the creditor of the 7492 Account.

13. On or about February 05, 2023, Barker allegedly owed Capital One $1,777.31 in connection with Barker's personal use and enjoyment of the 7492 Account (the "7492 Debt").

14. On February 05, 2023, Capital One communicated with Barker at 11:14 PM in an attempt to collect the 7492 Debt from Barker. Attached as Exhibit A is a copy said communication (the "7492 Communication").

15. In the 7492 Communication, Capital One states "**This is an attempt to collect a (consumer) debt (claim). Any information obtained will be used for that purpose**." *See* 7492 Communication (emphasis original).

16. In the 7492 Communication, Capital One states "**This communication is from a debt collector**." *See* 7492 Communication (emphasis original).

17. In the 7492 Communication, Capital One states the total amount of the debt it sought to collect as "1,777.31," states the minimum payment owed by Barker to Capital One as "52.00," and provides March 02, 2023, as the deadline for Barker to pay Capital One. *See* 7492 Communication (emphasis original).

18. The 7492 Communication was received by Barker at 11:14 PM.

19. The 7492 Communication caused Barker's cellular telephone to emit an audible sound at 11:14 PM and, in so doing, intruded into the peace and quiet realm of Barker that is private and personal.

20. The 7492 Communication caused Barker to waste time.

21. The 7492 Communication caused Barker to expend approximately one minute of time retrieving the subject cellular telephone in response to the 7492 Communication.

22. The 7492 Communication intruded upon Barker's seclusion and invaded Barker's privacy between 9:00 PM and 8:00 AM.

23. Capital One lacked Barker's express consent to communicate with Barker between 9:00 PM and 8:00 AM in Barker's time zone.

24. The 7492 Communication was intentionally sent by Capital One to Barker.

25. Capital One willfully chose to communicate with Barker at 11:14 PM in an attempt to collect the 7492 Debt because it (Capital One) collects payment from consumers more consistently and quickly when demanding payment in the middle of the night.

26. Capital One knew it lacked Barker's express consent to communicate with Barker between 9:00 PM and 8:00 AM in connection with the 7492 Account.

### *ALLEGATIONS OF ANDREWS*

27. Andrews is the debtor of an unsecured line of credit with an account number ending with 5823 (the "5823 Account").

28. At all times material, the 5823 Account was primarily used by Andrews for personal, family, or household purposes.

29. Capital One is the creditor of the 5823 Account.

30. On or about December 29, 2022, Andrews allegedly owed Capital One $143.41 in connection with Andrews' personal use and enjoyment of the 5823 Account (the "5823 Debt").

31. On December 29, 2022, Capital One communicated with Andrews at 6:40 AM in an attempt to collect the 5823 Debt from Andrews. Attached as Exhibit B is a copy said communication (the "5823 Communication").

32. In the 5823 Communication, Capital One states "**This is an attempt to collect a (consumer) debt (claim). Any information obtained will be used for that purpose**." *See* 5823 Communication (emphasis original).

33. In the 5823 Communication, Capital One states "**This communication is from ad debt collector**." *See* 5823 Communication (emphasis original).

34. In the 5823 Communication, Capital One states the total amount of the debt it sought to collect as "$143.41," states the minimum payment owed by Andrews to Capital One as "$28.00," and provides January 22, 2023, as the deadline for Andrews to pay Capital One. *See* 5823 Communication (emphasis original).

35. The 5823 Communication was received by Andrews at 6:40 AM.

36. The 5823 Communication caused Andrews' cellular telephone to emit an audible sound at 6:40 AM and, in so doing, intruded into the peace and quiet realm of Andrews that is private and personal.

37. The 5823 Communication caused Andrews to waste time.

38. The 5823 Communication caused Andrews to expend approximately one minute of time retrieving the subject cellular telephone in response to the 5823 Communication.

39. The 5823 Communication intruded upon Andrews' seclusion and invaded Andrews' privacy between 9:00 PM and 8:00 AM.

40. Capital One lacked Andrews' express consent to communicate with Andrews between 9:00 PM and 8:00 AM in Andrews' time zone.

41. The 5823 Communication was intentionally sent by Capital One to Andrews.

42. Capital One willfully chose to communicate with Andrews at 6:40 AM in an attempt to collect the 5823 Debt because it (Capital One) collects payment from consumers more consistently and quickly when demanding payment in the middle of the night.

43. Capital One knew it lacked Andrews' express consent to communicate with Andrews between 9:00 PM and 8:00 AM in connection with the 5823 Account.

## *ALLEGATIONS OF SHAPIRO*

44. Shapiro is the debtor of an unsecured line of credit with an account number ending with 4292 (the "4292 Account").

45. At all times material, the 4292 Account was primarily used by Shapiro for personal, family, or household purposes.

46. Capital One is the creditor of the 4292 Account.

47. On or about March 10, 2024, Shapiro allegedly owed Capital One $2,319.75 in connection with Shapiro's personal use and enjoyment of the 4292 Account (the "4292 Debt").

48. On March 10, 2024, Capital One communicated with Shapiro at 10:45 PM in an attempt to collect the 4292 Debt from Shapiro. Attached as Exhibit C is a copy said communication (the "4292 Communication").

49. In the 4292 Communication, Capital One states "**This is an attempt to collect a (consumer) debt (claim). Any information obtained will be used for that purpose**." *See* 4292 Communication (emphasis original).

50. In the 4292 Communication, Capital One states "**This communication is from ad debt collector**." *See* 4292 Communication (emphasis original).

51. In the 4292 Communication, Capital One states the total amount of the debt it sought to collect as "$2,319.75," states the minimum payment owed by Shapiro to Capital One as "$75.00," and provides April 03, 2024, as the deadline for Shapiro to pay Capital One. *See* 4292 Communication (emphasis original).

52. The 4292 Communication was received by Shapiro at 10:45 PM.

53. The 4292 Communication caused Shapiro's cellular telephone to emit an audible sound at 10:45 PM and, in so doing, intruded into the peace and quiet realm of Shapiro that is private and personal.

54. The 4292 Communication caused Shapiro to waste time.

55. The 4292 Communication caused Shapiro to expend approximately one minute of time retrieving the subject cellular telephone in response to the 4292 Communication.

56. The 4292 Communication intruded upon Shapiro's seclusion and invaded Shapiro's privacy between 9:00 PM and 8:00 AM.

57. Capital One lacked Shapiro's express consent to communicate with Shapiro between 9:00 PM and 8:00 AM in Shapiro's time zone.

58. The 4292 Communication was intentionally sent by Capital One to Shapiro.

59. Capital One willfully chose to communicate with Shapiro at 10:45 PM in an attempt to collect the 4292 Debt because it (Capital One) collects payment from consumers more consistently and quickly when demanding payment in the middle of the night.

60. Capital One knew it lacked Shapiro's express consent to communicate with Shapiro between 9:00 PM and 8:00 AM in connection with the 4292 Account.

### *ALLEGATIONS OF ALSHAMI*

61. Alshami is the debtor of an unsecured line of credit with an account number ending with 7220 (the "7220 Account").

62. At all times material, the 7220 Account was primarily used by Alshami for personal, family, or household purposes.

63. Capital One is the creditor of the 7220 Account.

64. On or about December 24, 2023, Alshami allegedly owed Capital One $2,799.00 in connection with Alshami's personal use and enjoyment of the 7220 Account (the "7220 Debt").

65. On December 24, 2023, Capital One communicated with Alshami at 11:10 PM in an attempt to collect the 7220 Debt from Alshami. Attached as Exhibit D is a copy said communication (the "7220 Communication").

66. In the 7220 Communication, Capital One states "**This is an attempt to collect a (consumer) debt (claim). Any information obtained will be used for that purpose**." *See* 7220 Communication (emphasis original).

67. In the 7220 Communication, Capital One states "**This communication is from ad debt collector**." *See* 7220 Communication (emphasis original).

68. In the 7220 Communication, Capital One states the total amount of the debt it sought to collect as "2,799.00," states the minimum payment owed by Alshami to Capital One as "$27.00," and provides January 19, 2024, as the deadline for Alshami to pay Capital One. *See* 7220 Communication (emphasis original).

69. The 7220 Communication was received by Alshami at 11:10 PM**.**

70. The 7220 Communication caused Alshami cellular telephone to emit an audible sound at 11:10 PM and, in so doing, intruded into the peace and quiet realm of Alshami that is private and personal.

71. The 7220 Communication caused Alshami to waste time.

72. The 7220 Communication caused Alshami to expend approximately one minute of time retrieving the subject cellular telephone in response to the 7220 Communication.

73. The 7220 Communication intruded upon Alshami's seclusion and invaded Alshami's privacy between 9:00 PM and 8:00 AM.

74. Capital One lacked Alshami's express consent to communicate with Alshami between 9:00 PM and 8:00 AM in Alshami's time zone.

75. The 7220 Communication was intentionally sent by Capital One to Alshami.

76. Capital One willfully chose to communicate with Alshami at 11:10 PM in an attempt to collect the 7220 Debt because it (Capital One) collects payment from consumers more consistently and quickly when demanding payment in the middle of the night.

77. Capital One knew it lacked Alshami's express consent to communicate with Alshami between 9:00 PM and 8:00 AM in connection with the 7220 Account.

### *ALLEGATIONS OF OLIVEIRA*

78. Oliveira is the debtor of an unsecured line of credit with an account number ending with 7869 (the "7869 Account").

79. At all times material, the 7869 Account was primarily used by Oliveira for personal, family, or household purposes.

80. Capital One is the creditor of the 7869 Account.

81. On or about May 19, 2024, Oliveira allegedly owed Capital One at least $25.00 in connection with Oliveira's personal use and enjoyment of the 7869 Account (the "7869 Debt").

82. On May 19, 2024, Capital One communicated with Oliveira at 7:41 AM in an attempt to collect the 7869 Debt from Oliveira. Attached as Exhibit E is a copy said communication (the "7869 Communication").

83. In the 7869 Communication, Capital One states "**Make a payment now to avoid a late fee**." *See* 7869 Communication (emphasis original).

84. In the 7869 Communication, Capital One states "**Your payment is due tomorrow**." *See* 7869 Communication (emphasis original).

85. In the 7869 Communication, Capital One states the minimum payment owed by Oliveira to Capital One as "$25.00" and provides May 19, 2024, as the deadline for Oliveira to pay Capital One. *See* 7869 Communication (emphasis original).

86. The 7869 Communication was received by Oliveira at 7:41 AM.

87. The 7869 Communication caused Oliveira's cellular telephone to emit an audible sound at 7:41 AM and, in so doing, intruded into the peace and quiet realm of Oliveira that is private and personal.

88. The 7869 Communication caused Oliveira to waste time.

89. The 7869 Communication caused Oliveira to expend approximately one minute of time retrieving the subject cellular telephone in response to the 7869 Communication.

90. The 7869 Communication intruded upon Oliveira's seclusion and invaded Oliveira's privacy between 9:00 PM and 8:00 AM.

91. Capital One lacked Oliveira's express consent to communicate with Oliveira between 9:00 PM and 8:00 AM in Oliveira's time zone.

92. The 7869 Communication was intentionally sent by Capital One to Oliveira.

93. Capital One willfully chose to communicate with Oliveira at 7:41 AM in an attempt to collect the 7869 Debt because it (Capital One) collects payment from consumers more consistently and quickly when demanding payment in the middle of the night.

94. Capital One knew it lacked Oliveira's express consent to communicate with Oliveira between 9:00 PM and 8:00 AM in connection with the 7869 Account.

### ***ALLEGATIONS OF PLAINTIFFS***

95. Capital One has the means and ability to limit its debt collection communications to Florida consumers to that of between 8:00 AM and 9:00 AM, but willfully fails to do so.

96. Capital One knows that, by communicating with a consumer *via* e-mail, the consumer's cellular telephone can emit an audible sound and, depending on the timing, that said e-mail will intrude into peace and quiet in a realm that is private and personal.

97. To Capital One, the economic benefit it (Capital One) realizes by demanding payment from Florida consumers between 9:00 PM and 8:00 AM in an attempt to collect a debt outweighs the harm it (Capital One) inflicts on Florida consumers by intruding into the peace and quiet realm private and personal.

98. Despite the privacy rights enjoyed by Plaintiffs under Fla. Stat. § 559.72(17), Capital One continues to communicate with Plaintiffs between 9:00 PM and 8:00 AM without any indication that it will cease.

99. Capital One's willful and otherwise reckless disregard for the privacy rights enjoyed by Florida consumers to be free for communications in connection with the collection of a debt between 9:00 PM and 8:00 AM warrants punitive damages to ensure Capital One's compliance with the law in the future.

## COUNT 1
## VIOLATION OF FLA. STAT. § 559.72(17)

100. Plaintiffs incorporates by reference ¶¶ 10-99 of this Complaint.

101. Pursuant to § 559.72(17) of the FCCPA, in collecting consumer debts, no person shall: "*[c]ommunicate with the debtor between the hours of 9 p.m. and 8 a.m. in the debtor's time zone without the prior consent of the debtor.*" Fla Stat. § 559.72(17) (emphasis added).

102. As stated above, Plaintiffs each received an electronic communication from Capital One between the hours of 9:00 PM and 8:00 AM. With respect to Barker, Andrews, Shapiro, and Alshami, Capital One explicitly asserted that the communication was "an attempt to collect a debt," that "any information obtained would be used for that purpose, that the "communication

[was] from a debt collector," lists the minimum about due, and provides a payment due date. With respect to Oliveira, Capital One states "Your payment is due tomorrow. Make a payment now to avoid a late fee," as well as directs Oliveira to make a minimum payment of $25.00 to avoid late fees. Thus, by communicating with Plaintiffs between 9:00 PM and 8:00 AM in an attempt to collect a debt, Capital One violated Fla. Stat. § 559.72(17).

103. Each of the subject electronic communications state the amount due, list a due date, and otherwise seek to induce the consumer to pay a debt to Capital One. Capital One intentionally sent each communication to Plaintiffs with the intent to induce payment despite the privacy rights enjoyed by Plaintiffs under § 559.72(17) of the FCCPA. Given Capital One's unlawful conduct is not confined to a single individual and, instead, is evidenced as Capital One's typical means of attempting to collect debts from Florida consumers, an award of punitive damages is necessary to stem Capital One's flagrant violation of Florida law.

104. WHEREFORE, Plaintiffs each requests relief and judgment as follows:

(a) Statutory damages as provided under Fla. Stat. §559.77(2);

(b) Actual damages as provided under Fla. Stat. §559.77(2);

(c) Punitive damages as provided under Fla. Stat. §559.77(2);

(d) An injunction prohibiting Capital One from engaging in further collection activities directed at Plaintiffs that are in violation of the FCCPA;

(e) Costs and reasonable attorneys' fees pursuant to Fla. Stat. §559.77(2); and

(f) Any other relief that this Court deems appropriate under the circumstances.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

DATED: October 23, 2024

                                                                                                 Respectfully Submitted,

                                                                                                 /s/ Thomas Patti
                                                                                                **THOMAS PATTI, ESQ.**
                                                                                                Florida Bar No. 118377
                                                                                                E-mail:     Tom@pzlg.legal
                                                                                                **VICTOR ZABALETA, ESQ.**
                                                                                                Florida Bar No. 118517
                                                                                                E-mail:     Victor@pzlg.legal
                                                                                                PATTI ZABALETA LAW GROUP
                                                                                                110 SE 6th Street Suite 1732
                                                                                                Fort Lauderdale, FL 33301
                                                                                                Phone:     561-542-8550

                                                                                                *COUNSEL FOR PLAINTIFF*