**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 0:24-cv-61987-AHS**

**MICHAEL BARKER,**
**RICHARD ANDREWS,**
**RYAN SHAPIRO,**
**LAMA ALSHAMI,**
**BRUNO BRITO DE OLIVEIRA,**

       Plaintiffs,

v.

                                             **JURY TRIAL DEMANDED**

**CAPITAL ONE N/A** *d/b/a* **CAPITAL ONE,**

                                             **INJUNCTIVE RELIEF SOUGHT**

       Defendant.

_____/

**FIRST AMENDED COMPLAINT**

       Plaintiff Michael Barker, Richard Andrews, Ryan Shapiro, Lama Alshami, and Bruno Brito De Oliveira (collectively, the "Plaintiffs") sue Defendant Capital One NA *d/b/a* Capital One ("Defendant" or "Capital One") for violations the Florida Consumer Collection Practices Act ("FCCPA").

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court arises under 28 U.S.C. § 1332, as the collective amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, Capital One is a citizen of Delaware, and Plaintiffs are citizens of Florida residing within this district.

2.      Venue in this District is proper because Plaintiffs reside here, Capital One transacts business here, and the complained conduct of Capital One occurred here.

**PARTIES**

3.      Plaintiff Michael Barker ("Barker") is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

4.      Plaintiff Richard Andrews ("Andrews") is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

5.      Plaintiff Ryan Shapiro ("Shapiro") is a natural person, and a citizen of the State of Florida, residing in Miami-Dade County, Florida.

6.      Plaintiff Lama Alshami ("Alshami") is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

7.      Plaintiff Bruno Brito De Oliveira ("Oliveira") is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

8.      Capital One is a Delaware corporation, with its principal place of business located in McLean, Virginia.

## DEMAND FOR JURY TRIAL

9.      Plaintiffs, respectfully, demand a trial by jury on all counts and issues so triable.

## ALLEGATIONS

### *ALLEGATIONS OF BARKER*

10.     Barker is the debtor of an unsecured line of credit with an account number ending with 7492 (the "7492 Account").

11.     At all times material, the 7492 Account was primarily used by Barker for personal, family, or household purposes.

12.     Capital One is the creditor of the 7492 Account.

13.     On or about February 05, 2023, Barker allegedly owed Capital One $1,777.31 in connection with Barker's personal use and enjoyment of the 7492 Account (the "7492 Debt").

14.     On February 05, 2023, Capital One communicated with Barker at 11:14 PM in an attempt to collect the 7492 Debt from Barker. Attached as Exhibit A is a copy said communication (the "7492 Communication").

15.     In the 7492 Communication, Capital One states "**This is an attempt to collect a (consumer) debt (claim). Any information obtained will be used for that purpose**." *See* 7492 Communication (emphasis original).

16.     In the 7492 Communication, Capital One states "**This communication is from a debt collector**." *See* 7492 Communication (emphasis original).

17.     In the 7492 Communication, Capital One states the total amount of the debt it sought to collect as "1,777.31," states the minimum payment owed by Barker to Capital One as "52.00," and provides March 02, 2023, as the deadline for Barker to pay Capital One. *See* 7492 Communication (emphasis original).

18.     The 7492 Communication was sent by Capital One at 11:14 PM on February 05, 2023.

19.     Capital One knew Barker was residing in Broward County, Florida, when it chose to send the 7492 Communication to Barker.

20.     The 7492 Communication was received by Barker at 11:14 PM on February 05, 2023.

21.     Immediately prior to 11:14 PM on February 05, 2023, Barker was resting, undisrupted, and otherwise in a peaceful and relaxed state of mind.

22.     The 7492 Communication caused Barker's cellular telephone to emit an audible sound at 11:14 PM and, in so doing, intruded into the peace and quiet realm of Barker that is private and personal.

23.     On February 05, 2023, at or about 11:14 PM, prompted by and in otherwise in response to the audible sound caused by the 7492 Communication, Barker retrieved said cellular telephone and, by and through said cellular telephone, opened and/or otherwise reviewed the 7492 Communication, identified Capital One as the sender of the 7492 Communication, and learned that Capital One was communicating with Barker in connection with the collection of the 7492 Debt.

24.     Capital One lacked consent directly from Barker to communicate with Barker in connection with collection of the 7492 Debt between 9:00 PM and 8:00 AM.

25.     Capital One knew it lacked Barker's express consent to communicate with Barker between 9:00 PM and 8:00 AM.

26.     Capital One knew that, without Barker's direct express consent, it was inconvenient to communicate with Barker between 9:00 PM and 8:00 AM.

27.     After reviewing the 7492 Communication and learning the subject matter thereof, Barker became upset and frustrated, as Capital One was attempting to collect a debt from Barker at 11:14 PM without Barker's direct consent or permission.

28.     Barker wasted approximately five (5) minutes of time retrieving Barker's cellular telephone and reviewing the 7492 Communication sent by Capital One at 11:14 PM.

29.     As a result of the 7492 Communication, Barker became restless and unable to return to the prior state of peace and relaxation enjoyed by Barker prior to receipt of the Communication.

30.     As a result of the 7492 Communication, Barker lost approximately one (1) hour of sleep on February 05, 2023.

31.     The natural consequence of the 7492 Communication is the harassment, oppression, or otherwise abuse of Barker in connection with the collection of the 7492 Debt

because Capital One knew that the method of communication it chose to transmit the 7492 Communication was inconvenient for Barker.

32.     Barker was inconvenienced by the 7492 Communication.

33.     Without direct consent, it is inconvenient to communicate with a consumer, such as Barker, between 9:00 PM and 8:00 AM.

34.     The 7492 Communication was intentionally sent by Capital One to Barker.

35.     Barker does not advance a breach of contract claim against Capital One.

36.     The written agreement entered into between Capital One and Barker that relates to the 7492 Account was drafted exclusively by Capital One and Barker did not have any opportunity or ability to modify the terms of said written agreement.

37.     The written agreement entered into between Capital One and Barker that relates to the 7492 Account must be construed against Capital One.

38.     The written agreement entered into between Capital One and Barker that relates the 7492 Account ambiguously states "[t]his Agreement is governed by applicable federal law and by Virginia law" without specifying, among other things, whether Virginia law exclusively applies, whether Virginia law applies to the interpretation of the agreement or the rights of the parties, or whether Barker was waiving rights enjoyed under Florida law.

39.     At no point in time did Barker agree to waive Barker's right to hold Capital One accountable for violations of Florida law.

40.     At no point in time did Barker enter into an agreement with Capital One that limited Barker's ability to hold Capital One accountable for violations of Florida law.

41.     No agreement between Capital One and Barker exists that operates to waive remedies enjoyed by Barker as a Florida consumer.

42.     At no point in time did Barker enter into an agreement with Capital One that was **exclusively** governed by the laws of a specific state.

43.     The 7492 Communication was received by Barker in Broward County, Florida.

### *ALLEGATIONS OF ANDREWS*

44.     Andrews is the debtor of an unsecured line of credit with an account number ending with 5823 (the "5823 Account").

45.     At all times material, the 5823 Account was primarily used by Andrews for personal, family, or household purposes.

46.     Capital One is the creditor of the 5823 Account.

47.     On or about December 29, 2022, Andrews allegedly owed Capital One $143.41 in connection with Andrews' personal use and enjoyment of the 5823 Account (the "5823 Debt").

48.     On December 29, 2022, Capital One communicated with Andrews at 6:40 AM in an attempt to collect the 5823 Debt from Andrews. Attached as Exhibit B is a copy said communication (the "5823 Communication").

49.     In the 5823 Communication, Capital One states "**This is an attempt to collect a (consumer) debt (claim). Any information obtained will be used for that purpose**." *See* 5823 Communication (emphasis original).

50.     In the 5823 Communication, Capital One states "**This communication is from ad debt collector**." *See* 5823 Communication (emphasis original).

51.     In the 5823 Communication, Capital One states the total amount of the debt it sought to collect as "$143.41," states the minimum payment owed by Andrews to Capital One as "$28.00," and provides January 22, 2023, as the deadline for Andrews to pay Capital One. *See* 5823 Communication (emphasis original).

52.     The 5823 Communication was sent by Capital One at 6:40 AM on December 29, 2022.

53.     Capital One knew Andrews was residing in Broward County, Florida, when it chose to send the 5823 Communication to Andrews.

54.     The 5823 Communication was received by Andrews at 6:40 AM on December 29, 2022.

55.     Immediately prior to 6:40 AM on December 29, 2022, Andrews was resting, undisrupted, and otherwise in a peaceful and relaxed state of mind.

56.     The 5823 Communication caused Andrews's cellular telephone to emit an audible sound at 6:40 AM and, in so doing, intruded into the peace and quiet realm of Andrews that is private and personal.

57.     On December 29, 2022, at or about 6:40 AM, prompted by and in otherwise in response to the audible sound caused by the 5823 Communication, Andrews retrieved said cellular telephone and, by and through said cellular telephone, opened and/or otherwise reviewed the 5823 Communication, identified Capital One as the sender of the 5823 Communication, and learned that Capital One was communicating with Andrews in connection with the collection of the 5823 Debt.

58.     Capital One lacked consent directly from Andrews to communicate with Andrews in connection with collection of the 5823 Debt between 9:00 PM and 8:00 AM.

59.     Capital One knew it lacked Andrews's express consent to communicate with Andrews between 9:00 PM and 8:00 AM.

60.     Capital One knew that, without Andrews's direct express consent, it was inconvenient to communicate with Andrews between 9:00 PM and 8:00 AM.

61. After reviewing the 5823 Communication and learning the subject matter thereof, Andrews became upset and frustrated, as Capital One was attempting to collect a debt from Andrews at 6:40 AM without Andrews's direct consent or permission.

62. Andrews wasted approximately five (5) minutes of time retrieving Andrews's cellular telephone and reviewing the 5823 Communication sent by Capital One at 6:40 AM.

63. As a result of the 5823 Communication, Andrews became restless and unable to return to the prior state of peace and relaxation enjoyed by Andrews prior to receipt of the Communication.

64. As a result of the 5823 Communication, Andrews lost approximately one (1) hour of sleep on December 29, 2022.

65. The natural consequence of the 5823 Communication is the harassment, oppression, or otherwise abuse of Andrews in connection with the collection of the 5823 Debt because Capital One knew that the method of communication it chose to transmit the 5823 Communication was inconvenient for Andrews.

66. Andrews was inconvenienced by the 5823 Communication.

67. Without direct consent, it is inconvenient to communicate with a consumer, such as Andrews, between 9:00 PM and 8:00 AM.

68. The 5823 Communication was intentionally sent by Capital One to Andrews.

69. Andrews does not advance a breach of contract claim against Capital One.

70. The written agreement entered into between Capital One and Andrews that relates to the 5823 Account was drafted exclusively by Capital One and Andrews did not have any opportunity or ability to modify the terms of said written agreement.

## ALLEGATIONS OF SHAPIRO

71.     Shapiro is the debtor of an unsecured line of credit with an account number ending with 4292 (the "4292 Account").

72.     At all times material, the 4292 Account was primarily used by Shapiro for personal, family, or household purposes.

73.     Capital One is the creditor of the 4292 Account.

74.     On or about March 10, 2024, Shapiro allegedly owed Capital One $2,319.75 in connection with Shapiro's personal use and enjoyment of the 4292 Account (the "4292 Debt").

75.     On March 10, 2024, Capital One communicated with Shapiro at 10:45 PM in an attempt to collect the 4292 Debt from Shapiro. Attached as Exhibit C is a copy said communication (the "4292 Communication").

76.     In the 4292 Communication, Capital One states "**This is an attempt to collect a (consumer) debt (claim). Any information obtained will be used for that purpose**." *See* 4292 Communication (emphasis original).

77.     In the 4292 Communication, Capital One states "**This communication is from ad debt collector**." *See* 4292 Communication (emphasis original).

78.     In the 4292 Communication, Capital One states the total amount of the debt it sought to collect as "$2,319.75," states the minimum payment owed by Shapiro to Capital One as "$75.00," and provides April 03, 2024, as the deadline for Shapiro to pay Capital One. *See* 4292 Communication (emphasis original).

79.     The 4292 Communication was sent by Capital One at 10:45 PM on March 10, 2024.

80.     Capital One knew Shapiro was residing in Broward County, Florida, when it chose to send the 4292 Communication to Shapiro.

81.     The 4292 Communication was received by Shapiro at 10:45 PM on March 10, 2024.

82.     Immediately prior to 10:45 PM on March 10, 2024, Shapiro was resting, undisrupted, and otherwise in a peaceful and relaxed state of mind.

83.     The 4292 Communication caused Shapiro's cellular telephone to emit an audible sound at 10:45 PM and, in so doing, intruded into the peace and quiet realm of Shapiro that is private and personal.

84.     On March 10, 2024, at or about 10:45 PM, prompted by and in otherwise in response to the audible sound caused by the 4292 Communication, Shapiro retrieved said cellular telephone and, by and through said cellular telephone, opened and/or otherwise reviewed the 4292 Communication, identified Capital One as the sender of the 4292 Communication, and learned that Capital One was communicating with Shapiro in connection with the collection of the 4292 Debt.

85.     Capital One lacked consent directly from Shapiro to communicate with Shapiro in connection with collection of the 4292 Debt between 9:00 PM and 8:00 AM.

86.     Capital One knew it lacked Shapiro's express consent to communicate with Shapiro between 9:00 PM and 8:00 AM.

87.     Capital One knew that, without Shapiro's direct express consent, it was inconvenient to communicate with Shapiro between 9:00 PM and 8:00 AM.

88.     After reviewing the 4292 Communication and learning the subject matter thereof, Shapiro became upset and frustrated, as Capital One was attempting to collect a debt from Shapiro at 10:45 PM without Shapiro's direct consent or permission.

89.     Shapiro wasted approximately five (5) minutes of time retrieving Shapiro's cellular telephone and reviewing the 4292 Communication sent by Capital One at 10:45 PM.

90.     As a result of the 4292 Communication, Shapiro became restless and unable to return to the prior state of peace and relaxation enjoyed by Shapiro prior to receipt of the Communication.

91.     As a result of the 4292 Communication, Shapiro lost approximately one (1) hour of sleep on March 10, 2024.

92.     The natural consequence of the 4292 Communication is the harassment, oppression, or otherwise abuse of Shapiro in connection with the collection of the 4292 Debt because Capital One knew that the method of communication it chose to transmit the 4292 Communication was inconvenient for Shapiro.

93.     Shapiro was inconvenienced by the 4292 Communication.

94.     Without direct consent, it is inconvenient to communicate with a consumer, such as Shapiro, between 9:00 PM and 8:00 AM.

95.     The 4292 Communication was intentionally sent by Capital One to Shapiro.

96.     Shapiro does not advance a breach of contract claim against Capital One.

97.     The written agreement entered into between Capital One and Shapiro that relates to the 4292 Account was drafted exclusively by Capital One and Shapiro did not have any opportunity or ability to modify the terms of said written agreement.

98.     The written agreement entered into between Capital One and Shapiro that relates to the 4292 Account must be construed against Capital One.

99.     The written agreement entered into between Capital One and Shapiro that relates the 4292 Account ambiguously states "[t]his Agreement is governed by applicable federal law and

by Virginia law" without specifying, among other things, whether Virginia law exclusively applies, whether Virginia law applies to the interpretation of the agreement or the rights of the parties, or whether Shapiro was waiving rights enjoyed under Florida law.

100.    At no point in time did Shapiro agree to waive Shapiro's right to hold Capital One accountable for violations of Florida law.

101.    At no point in time did Shapiro enter into an agreement with Capital One that limited Shapiro's ability to hold Capital One accountable for violations of Florida law.

102.    No agreement between Capital One and Shapiro exists that operates to waive remedies enjoyed by Shapiro as a Florida consumer.

103.    At no point in time did Shapiro enter into an agreement with Capital One that was **exclusively** governed by the laws of a specific state.

104.    The 4292 Communication was received by Shapiro in Broward County, Florida.

### *ALLEGATIONS OF ALSHAMI*

105.    Alshami is the debtor of an unsecured line of credit with an account number ending with 7220 (the "7220 Account").

106.    At all times material, the 7220 Account was primarily used by Alshami for personal, family, or household purposes.

107.    Capital One is the creditor of the 7220 Account.

108.    On or about December 24, 2023, Alshami allegedly owed Capital One $2,799.00 in connection with Alshami's personal use and enjoyment of the 7220 Account (the "7220 Debt").

109.    On December 24, 2023, Capital One communicated with Alshami at 11:10 PM in an attempt to collect the 7220 Debt from Alshami. Attached as Exhibit D is a copy said communication (the "7220 Communication").

110.    In the 7220 Communication, Capital One states "**This is an attempt to collect a (consumer) debt (claim). Any information obtained will be used for that purpose**." *See* 7220 Communication (emphasis original).

111.    In the 7220 Communication, Capital One states "**This communication is from ad debt collector**." *See* 7220 Communication (emphasis original).

112.    In the 7220 Communication, Capital One states the total amount of the debt it sought to collect as "2,799.00," states the minimum payment owed by Alshami to Capital One as "$27.00," and provides January 19, 2024, as the deadline for Alshami to pay Capital One. *See* 7220 Communication (emphasis original).

113.    The 7220 Communication was sent by Capital One at 11:10 PM on December 24, 2023.

114.    Capital One knew Alshami was residing in Broward County, Florida, when it chose to send the 7220 Communication to Alshami.

115.    The 7220 Communication was received by Alshami at 11:10 PM on December 24, 2023.

116.    Immediately prior to 11:10 PM on December 24, 2023, Alshami was resting, undisrupted, and otherwise in a peaceful and relaxed state of mind.

117.    The 7220 Communication caused Alshami's cellular telephone to emit an audible sound at 11:10 PM and, in so doing, intruded into the peace and quiet realm of Alshami that is private and personal.

118.    On December 24, 2023, at or about 11:10 PM, prompted by and in otherwise in response to the audible sound caused by the 7220 Communication, Alshami retrieved said cellular telephone and, by and through said cellular telephone, opened and/or otherwise reviewed the 7220

Communication, identified Capital One as the sender of the 7220 Communication, and learned that Capital One was communicating with Alshami in connection with the collection of the 7220 Debt.

119.    Capital One lacked consent directly from Alshami to communicate with Alshami in connection with collection of the 7220 Debt between 9:00 PM and 8:00 AM.

120.    Capital One knew it lacked Alshami's express consent to communicate with Alshami between 9:00 PM and 8:00 AM.

121.    Capital One knew that, without Alshami's direct express consent, it was inconvenient to communicate with Alshami between 9:00 PM and 8:00 AM.

122.    After reviewing the 7220 Communication and learning the subject matter thereof, Alshami became upset and frustrated, as Capital One was attempting to collect a debt from Alshami at 11:10 PM without Alshami's direct consent or permission.

123.    Alshami wasted approximately five (5) minutes of time retrieving Alshami's cellular telephone and reviewing the 7220 Communication sent by Capital One at 11:10 PM.

124.    As a result of the 7220 Communication, Alshami became restless and unable to return to the prior state of peace and relaxation enjoyed by Alshami prior to receipt of the Communication.

125.    As a result of the 7220 Communication, Alshami lost approximately one (1) hour of sleep on December 24, 2023.

126.    The natural consequence of the 7220 Communication is the harassment, oppression, or otherwise abuse of Alshami in connection with the collection of the 7220 Debt because Capital One knew that the method of communication it chose to transmit the 7220 Communication was inconvenient for Alshami.

127.    Alshami was inconvenienced by the 7220 Communication.

128.    Without direct consent, it is inconvenient to communicate with a consumer, such as Alshami, between 9:00 PM and 8:00 AM.

129.    The 7220 Communication was intentionally sent by Capital One to Alshami.

130.    Alshami does not advance a breach of contract claim against Capital One.

131.    The written agreement entered into between Capital One and Alshami that relates to the 7220 Account was drafted exclusively by Capital One and Alshami did not have any opportunity or ability to modify the terms of said written agreement.

### *ALLEGATIONS OF OLIVEIRA*

132.    Oliveira is the debtor of an unsecured line of credit with an account number ending with 7869 (the "7869 Account").

133.    At all times material, the 7869 Account was primarily used by Oliveira for personal, family, or household purposes.

134.    Capital One is the creditor of the 7869 Account.

135.    On or about May 19, 2024, Oliveira allegedly owed Capital One at least $25.00 in connection with Oliveira's personal use and enjoyment of the 7869 Account (the "7869 Debt").

136.    On May 19, 2024, Capital One communicated with Oliveira at 7:41 AM in an attempt to collect the 7869 Debt from Oliveira. Attached as Exhibit E is a copy said communication (the "7869 Communication").

137.    In the 7869 Communication, Capital One states "**Make a payment now to avoid a late fee**." *See* 7869 Communication (emphasis original).

138.    In the 7869 Communication, Capital One states "**Your payment is due tomorrow**." *See* 7869 Communication (emphasis original).

139.    In the 7869 Communication, Capital One states the minimum payment owed by Oliveira to Capital One as "$25.00" and provides May 19, 2024, as the deadline for Oliveira to pay Capital One. *See* <u>7869 Communication</u> (emphasis original).

140.    The 7869 Communication was sent by Capital One at 7:41 AM on May 19, 2024.

141.    Capital One knew Oliveira was residing in Broward County, Florida, when it chose to send the 7869 Communication to Oliveira.

142.    The 7869 Communication was received by Oliveira at 7:41 AM on May 19, 2024.

143.    Immediately prior to 7:41 AM on May 19, 2024, Oliveira was resting, undisrupted, and otherwise in a peaceful and relaxed state of mind.

144.    The 7869 Communication caused Oliveira's cellular telephone to emit an audible sound at 7:41 AM and, in so doing, intruded into the peace and quiet realm of Oliveira that is private and personal.

145.    On May 19, 2024, at or about 7:41 AM, prompted by and in otherwise in response to the audible sound caused by the 7869 Communication, Oliveira retrieved said cellular telephone and, by and through said cellular telephone, opened and/or otherwise reviewed the 7869 Communication, identified Capital One as the sender of the 7869 Communication, and learned that Capital One was communicating with Oliveira in connection with the collection of the 7869 Debt.

146.    Capital One lacked consent directly from Oliveira to communicate with Oliveira in connection with collection of the 7869 Debt between 9:00 PM and 8:00 AM.

147.    Capital One knew it lacked Oliveira's express consent to communicate with Oliveira between 9:00 PM and 8:00 AM.

148.    Capital One knew that, without Oliveira's direct express consent, it was inconvenient to communicate with Oliveira between 9:00 PM and 8:00 AM.

149.    After reviewing the 7869 Communication and learning the subject matter thereof, Oliveira became upset and frustrated, as Capital One was attempting to collect a debt from Oliveira at 7:41 AM without Oliveira's direct consent or permission.

150.    Oliveira wasted approximately five (5) minutes of time retrieving Oliveira's cellular telephone and reviewing the 7869 Communication sent by Capital One at 7:41 AM.

151.    As a result of the 7869 Communication, Oliveira became restless and unable to return to the prior state of peace and relaxation enjoyed by Oliveira prior to receipt of the Communication.

152.    As a result of the 7869 Communication, Oliveira lost approximately one (1) hour of sleep on May 19, 2024.

153.    The natural consequence of the 7869 Communication is the harassment, oppression, or otherwise abuse of Oliveira in connection with the collection of the 7869 Debt because Capital One knew that the method of communication it chose to transmit the 7869 Communication was inconvenient for Oliveira.

154.    Oliveira was inconvenienced by the 7869 Communication.

155.    Without direct consent, it is inconvenient to communicate with a consumer, such as Oliveira, between 9:00 PM and 8:00 AM.

156.    The 7869 Communication was intentionally sent by Capital One to Oliveira.

157.    Oliveira does not advance a breach of contract claim against Capital One.

158.    The written agreement entered into between Capital One and Oliveira that relates to the 7869 Account was drafted exclusively by Capital One and Oliveira did not have any opportunity or ability to modify the terms of said written agreement.

159.    The written agreement entered into between Capital One and Oliveira that relates to the 7869 Account must be construed against Capital One.

160.    The written agreement entered into between Capital One and Oliveira that relates the 7869 Account ambiguously states "[t]his Agreement is governed by applicable federal law and by Virginia law" without specifying, among other things, whether Virginia law exclusively applies, whether Virginia law applies to the interpretation of the agreement or the rights of the parties, or whether Oliveira was waiving rights enjoyed under Florida law.

161.    At no point in time did Oliveira agree to waive Oliveira's right to hold Capital One accountable for violations of Florida law.

162.    At no point in time did Oliveira enter into an agreement with Capital One that limited Oliveira's ability to hold Capital One accountable for violations of Florida law.

163.    No agreement between Capital One and Oliveira exists that operates to waive remedies enjoyed by Oliveira as a Florida consumer.

164.    At no point in time did Oliveira enter into an agreement with Capital One that was **exclusively** governed by the laws of a specific state.

165.    The 7869 Communication was received by Oliveira in Broward County, Florida.

### *ALLEGATIONS OF PLAINTIFFS*

166.    The natural consequent of communicating with a consumer between 9:00 PM and 8:00 AM without the express consent directly from the consumer is the harassment and oppression of the consumer.

167.    Capital One has the means and ability to limit its debt collection communications to Florida consumers to that of between 8:00 AM and 9:00 AM, but willfully fails to do so.

168.    Capital One knows that, by communicating with a consumer *via* e-mail, the consumer's cellular telephone can emit an audible sound and, depending on the timing, that said e-mail will intrude into peace and quiet in a realm that is private and personal.

169.    Capital One willfully chose to communicate with Plaintiffs between 9:00 PM and 8:00 AM because it (Capital One) collects payment from consumers more consistently and quickly when demanding payment after 9:00 PM and before 8:00 AM in the recipient's time zone.

170.    To Capital One, the economic benefit it (Capital One) realizes by demanding payment from Florida consumers between 9:00 PM and 8:00 AM in an attempt to collect a debt outweighs the harm it (Capital One) inflicts on Florida consumers by intruding into the peace and quiet realm private and personal.

171.    Despite the privacy rights enjoyed by Plaintiffs under Fla. Stat. § 559.72(17), Capital One continues to communicate with Plaintiffs between 9:00 PM and 8:00 AM without any indication that it will cease.

172.    Capital One's willful and otherwise reckless disregard for the privacy rights enjoyed by Florida consumers to be free for communications in connection with the collection of a debt between 9:00 PM and 8:00 AM warrants punitive damages to ensure Capital One's compliance with the law in the future.

### COUNT 1
### <u>VIOLATION OF FLA. STAT. § 559.72(17)</u>

173.    Plaintiffs incorporate by reference ¶¶ 10-172 of this Amended Complaint.

174.    Pursuant to § 559.72(17) of the FCCPA, in collecting consumer debts, no person shall: "*[c]ommunicate with the debtor between the hours of 9 p.m. and 8 a.m. in the debtor's time zone without the prior consent of the debtor.*" Fla Stat. § 559.72(17) (emphasis added).

175.    As stated above, Plaintiffs each received an electronic communication from Capital One between the hours of 9:00 PM and 8:00 AM. With respect to Barker, Andrews, Shapiro, and Alshami, Capital One explicitly asserted that the communication was "an attempt to collect a debt," that "any information obtained would be used for that purpose, that the "communication [was] from a debt collector," lists the minimum about due, and provides a payment due date. With respect to Oliveira, Capital One states "Your payment is due tomorrow. Make a payment now to avoid a late fee," as well as directs Oliveira to make a minimum payment of $25.00 to avoid late fees. Thus, by communicating with Plaintiffs between 9:00 PM and 8:00 AM in an attempt to collect a debt, Capital One violated Fla. Stat. § 559.72(17).

176.    Each of the subject electronic communications state the amount due, list a due date, and otherwise seek to induce the consumer to pay a debt to Capital One. Capital One intentionally sent each communication to Plaintiffs with the intent to induce payment despite the privacy rights enjoyed by Plaintiffs under § 559.72(17) of the FCCPA.

177.    Due to the timing and nature of the subject communications, along with Plaintiffs' receipt and review thereof, Plaintiffs suffered from intrusion into the peace and quiet realm private and personal, frustration, aggravation, wasted time and lost sleep.

178.    Given Capital One's unlawful conduct is not confined to a single individual and, instead, is evidenced as Capital One's typical means of attempting to collect debts from Florida consumers, an award of punitive damages is necessary to stem Capital One's flagrant violation of Florida law.

179.    WHEREFORE, Plaintiffs each requests relief and judgment as follows:

(a)    $1,000.00 in statutory damages as provided under Fla. Stat. §559.77(2) for a total of $5,000.00;

(b)    Actual damages of $5,000.00 as provided under Fla. Stat. §559.77(2) for a total of $25,000.00;

(c)    Punitive damages as provided under Fla. Stat. §559.77(2);

(d)    An injunction prohibiting Capital One from engaging in further collection activities directed at Plaintiffs that are in violation of the FCCPA;

(e)    Costs and reasonable attorneys' fees pursuant to Fla. Stat. §559.77(2); and

(f)    Any other relief that this Court deems appropriate under the circumstances.

## COUNT 2
## VIOLATION OF FLA. STAT. § 559.72(7)

180.    Plaintiffs incorporate by reference ¶¶ 10-172 of this Amended Complaint.

181.    Pursuant to § 559.72(17) of the FCCPA, in collecting consumer debts, no person shall: "*willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.*" Fla Stat. § 559.72(17) (emphasis added).

182.    As stated above, Plaintiffs each received an electronic communication from Capital One between the hours of 9:00 PM and 8:00 AM. In the moments following each of Plaintiffs' receipt of the communication, each of the Plaintiffs reviewed the communication, identified Capital One as the sender, and learned that Capital One was communicating with him or her in connection with the collection of a debt. In so doing, each of the Plaintiffs wasted time and became upset, as Capital One was communicating with Plaintiffs at an inconvenient time without the consent or permission of Plaintiffs.

183.    Capital One's communication with Plaintiffs at between 9:00 PM and 8:00 AM was an explicit attempt to collect the underlying debts from Plaintiffs, as Capital One expressly states in each of the subject communications that "this is an attempt to collect a debt."

184.    Capital One knew the natural consequence of communicating with Plaintiffs between 9:00 PM and 8:00 AM, without first obtaining consent directly from Plaintiffs, would be harassed and/or oppressive.

185.    Thus, by attempt to collect the Consumer Debt from Plaintiffs between 9:00 PM and 8:00 AM, Capital One engaged in conduct the natural consequence of was harassing and oppressive to Plaintiffs and, as a result thereof, violated Fla. Stat. § 559.72(7).

186.    Due to the timing and nature of the subject communications, along with Plaintiffs' receipt and review thereof, Plaintiffs suffered from intrusion into the peace and quiet realm private and personal, frustration, aggravation, wasted time and lost sleep.

187.    Given Capital One's unlawful conduct is not confined to a single individual and, instead, is evidenced as Capital One's typical means of attempting to collect debts from Florida consumers, an award of punitive damages is necessary to stem Capital One's flagrant violation of Florida law.

188.    WHEREFORE, Plaintiffs each requests relief and judgment as follows:

(a)    $1,000.00 in statutory damages as provided under Fla. Stat. §559.77(2) for a total of $5,000.00;

(b)    Actual damages of $5,000.00 as provided under Fla. Stat. §559.77(2) for a total of $25,000.00;

(c)    Punitive damages as provided under Fla. Stat. §559.77(2);

(d)    An injunction prohibiting Capital One from engaging in further collection activities directed at Plaintiffs that are in violation of the FCCPA;

(e)    Costs and reasonable attorneys' fees pursuant to Fla. Stat. §559.77(2); and

(f)      Any other relief that this Court deems appropriate under the circumstances.

**COUNT 3**
**VIOLATION OF FLA. STAT. § 559.72(9)**

189.    Plaintiffs incorporate by reference ¶¶ 10-172 of this Amended Complaint.

190.    Pursuant to § 559.72(9) of the FCCPA, in collecting consumer debts, no person shall: "*assert the existence of some* [a] *legal right when such person knows that the right does not exist.*" Fla Stat. § 559.72(17) (emphasis added).

191.    As stated above, Plaintiffs each received an electronic communication from Capital One between the hours of 9:00 PM and 8:00 AM. In the moments following each of Plaintiffs' receipt of the communication, each of the Plaintiffs reviewed the communication, identified Capital One as the sender, and learned that Capital One was communicating with him or her in connection with the collection of a debt. In so doing, each of the Plaintiffs wasted time and became upset, as Capital One was communicating with Plaintiffs at an inconvenient time without the consent or permission of Plaintiffs.

192.    Here, Capital One asserted the right to communicate with Plaintiffs in connection with the collection of a debt between 9:00 PM and 8:00 AM. Capital One knew, however, that it lacked the express consent of each of the Plaintiffs to communicate with him or her during that timeframe. Indeed, Capital One may have the right to communicate with debtors in connection with amounts allegedly owed, but Capital One does not enjoy the right to communicate with a consumer *via* any method at any time, especially when, under Florida law, consumers enjoy the statutory right to be free from communications regarding a debt between 9:00 PM and 8:00 AM, *see* Fla. Stat. § 559.72(17), as well as protected from conduct which could be reasonably expected

to harass, *see* Fla. Stat. § 559.72(7), such as communicating with a consumer in the middle of the night or in the early morning.

193.    As such, by communicating with Plaintiffs between 9:00 PM and 8:00 AM, at minimum, in connection with the collection of a debt, Capital One asserted a legal right which it knew does not exist in violation of § 559.72(9) of the FCCPA.

194.    Due to the timing and nature of the subject communications, along with Plaintiffs' receipt and review thereof, Plaintiffs suffered from intrusion into the peace and quiet realm private and personal, frustration, aggravation, wasted time and lost sleep.

195.    Given Capital One's unlawful conduct is not confined to a single individual and, instead, is evidenced as Capital One's typical means of attempting to collect debts from Florida consumers, an award of punitive damages is necessary to stem Capital One's flagrant violation of Florida law.

196.    WHEREFORE, Plaintiffs each requests relief and judgment as follows:

    (a)    $1,000.00 in statutory damages as provided under Fla. Stat. §559.77(2) for a total of $5,000.00;

    (b)    Actual damages of $5,000.00 as provided under Fla. Stat. §559.77(2) for a total of $25,000.00;

    (c)    Punitive damages as provided under Fla. Stat. §559.77(2);

    (d)    An injunction prohibiting Capital One from engaging in further collection activities directed at Plaintiffs that are in violation of the FCCPA;

    (e)    Costs and reasonable attorneys' fees pursuant to Fla. Stat. §559.77(2); and

    (f)    Any other relief that this Court deems appropriate under the circumstances.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

DATED: January 3, 2025

Respectfully Submitted,

 /s/ Thomas Patti
**THOMAS PATTI, ESQ.**
Florida Bar No. 118377
E-mail:    Tom@pzlg.legal
**VICTOR ZABALETA, ESQ.**
Florida Bar No. 118517
E-mail:    Victor@pzlg.legal
PATTI ZABALETA LAW GROUP
110 SE 6th Street Suite 1732
Fort Lauderdale, FL 33301
Phone:    561-542-8550

*COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 3, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

 /s/ Thomas J. Patti
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377