**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**CASE NO: 0:24-cv-61987-AHS**

MICHAEL BARKER, RICHARD ANDREWS,
RYAN SHAPIRO, LAMA ALSHAMI, and
BRUNO BRITO DE OLIVEIRA,

      Plaintiffs,

v.

CAPITAL ONE FINANCIAL
CORPORATION D/B/A CAPITAL ONE,

      Defendant.

_____/

## CAPITAL ONE, N.A.'S SECOND AMENDED MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM [1]

      Defendant, CAPITAL ONE, N.A. ("Capital One"), moves to dismiss the Amended Complaint filed by Plaintiffs, MICHAEL BARKER, RICHARD ANDREWS, RYAN SHAPIRO, LAMA ALSHAMI, and BRUNO BRITO DE OLIVEIRA, for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. This Court lacks subject matter jurisdiction because Plaintiffs cannot meet the $75,000 minimum threshold for diversity jurisdiction by aggregating their damages or speculating as to the amounts. Additionally, Plaintiffs have failed to state a claim for violations of Fla. Stat. § 559.72(7), (9), and (17) of the Florida Consumer Collection Practices Act ("FCCPA") on the following grounds: (1) federal and Virginia law govern the Capital One accounts at issue so Florida law does not apply; (2) the emails at issue are not actionable under FCCPA subsections (7) and (17); and (3) Plaintiffs fail to allege a sufficiently concrete injury for Article III standing.

### PROCEDURAL AND FACTUAL BACKGROUND

---

[1] Amended per this Court's Orders, DE 21, 23.

1.      On October 23, 2024, Plaintiffs filed the instant action against Capital One for purported FCCPA violations, claiming that Capital One sent the five Plaintiffs five separate emails attempting to collect a consumer debt between the hours of 9 p.m. and 8 a.m. in violation of the FCCPA. Compl. ¶¶ 10-94 [DE 1].

2.      On December 20, 2024, Capital One filed its Motion to Dismiss the original Complaint for lack of subject matter jurisdiction and failure to state a claim. [DE 11].

3.      On January 3, 2025, Plaintiffs filed their Amended Complaint, in which they each added two additional FCCPA claims under subsections 559.72(7) and (9), presumably hoping to satisfy the $75,000 amount in controversy requirement. Amd. Compl. ¶¶ 180-196 [DE 12]. Plaintiffs also asserted that the customer agreements governing their respective Capital One accounts are ambiguous because the agreements do not use magic words stating they are governed *exclusively* by Virginia and federal law. Amd. Compl. ¶¶ 38, 99, 160 [DE 12]. Finally, Plaintiffs now allege they opened and read the subject emails at the exact moment such emails were sent, wasted approximately five minutes of time reading them, and lost 1 hour of sleep.  Amd. Compl. ¶¶ 28-30, 62-64, 89-91, 123-125, 150-152 [DE 12].

4.      Plaintiffs attach copies of the subject courtesy emails from Capital One, all of which simply informed Plaintiffs that their monthly periodic statements, which are required by federal Regulation Z, 12 C.F.R. § 1026.7, were ready and available in Capital One's online banking platform, and regular monthly minimum payments were due on a forthcoming date. Amd. Compl., Ex. A – Ex. E [DE 12-1 – DE 12-5].

5.      The Capital One accounts at issue are Plaintiff Barker's account ending in -7492; Plaintiff Andrews' account ending in -5823; Plaintiff Shapiro's account ending in -4292; Plaintiff Alshami's account ending in -7220; and Plaintiff Oliveria's account ending in -7869 (collectively, the "Accounts"). Amd. Compl., ¶¶ 10, 44, 71, 105, 132 [DE 12]. The Customer Agreement for

Plaintiff Barker is attached as "Exhibit 1," for Plaintiff Andrews as "Exhibit 2," for Plaintiff Shapiro as "Exhibit 3," for Plaintiff Alshami as "Exhibit 4," and for Plaintiff Oliveira as "Exhibit 5." In their Amended Complaint, the Plaintiffs have incorporated the choice of law provision of these Customer Agreements by referring to them, and in some cases quoting them.[2]

6.      As to Count I for alleged violation of subsection 559.72(17), Plaintiffs seek $1,000 in statutory damages (for a total of $5,000), actual damages of $5,000 (for a total of $25,000), and punitive damages. Amd. Compl. ¶ 179 [DE 12]. As to Count II for alleged violation of subsection 559.72(7), which is based on the same purported conduct by Capital One, Plaintiffs seek $1,000 in statutory damages (for a total of $5,000), actual damages of $5,000 (for a total of $25,000), and punitive damages. Amd. Compl. ¶ 188 [DE 12]. As to Count III for alleged violation of subsection 559.72(9), which is based on the same five emails, Plaintiffs seek $1,000 in statutory damages (for a total of $5,000), actual damages of $5,000 (for a total of $25,000), and punitive damages. Amd. Compl. ¶ 196 [DE 12]. Plaintiffs also seek an injunction prohibiting further "collection activities," costs, and attorney's fees. Amd. Compl. ¶¶ 179, 188, 196 [DE 12].

## LEGAL ARGUMENT

The Amended Complaint must be dismissed for lack of subject matter jurisdiction and failure to state a claim because (1) Plaintiffs cannot treble their alleged actual damages sustained as a result of the same alleged prohibited conduct, and thus Plaintiffs still do not satisfy the $75,000 amount in controversy requirement; (2) the Accounts are unambiguously governed by federal and Virgina law and Florida law does not apply; (3) the subject courtesy emails are not actionable

---

[2] Amd. Compl. ¶¶36-38 (Barker), 70 (Andrews), 97-99 (Shapiro), 131 (Alshami), 159-160 (Oliveira) [DE 12]. In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

under FCCPA subsections (7) and (17); and (4) Plaintiffs still have not and cannot allege a sufficient concrete injury.

## I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS CANNOT MEET THE $75,000 THRESHOLD.

Plaintiffs' Complaint must be dismissed for lack of subject matter jurisdiction, which serves as an independent ground for dismissal under Federal Rule of Civil Procedure 12(b)(1). United States district courts have diversity jurisdiction if the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, pursuant to 28 U.S.C. § 1332(a). It is undisputed that the parties have diverse citizenship.

As for the amount in controversy, a plaintiff can satisfy the requirement if he or she claims "a sufficient sum in good faith." *Doe v. Predator Catchers, Inc*., 2023 U.S. Dist. LEXIS 107445, at *6 (M.D. Fla. June 21, 2023) (quoting *Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F.3d 805 (11th Cir. 2003)). However, "a conclusory allegation that the amount in controversy is satisfied is insufficient to sustain jurisdiction once that allegation is challenged." *First Acceptance Ins. v. Hemphill*, 2009 WL 10671295, at *2 (M.D. Fla. July 28, 2009). "Further, the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt,* 293 F.3d 1254, 1257 11th Cir. 2002).

Generally, a court can dismiss for failure to satisfy the amount in controversy requirement "only if it is convinced 'to a legal certainty' that the claims of the plaintiff in question will not exceed $75,000." *McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309, 1312 (11th Cir. 2021). But "[w]hile a federal court must of course give due credit to the good faith claims of the plaintiff, a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury." *Morrison v. Allstate Indem. Co*., 228 F.3d 1255, 1272

(11th Cir. 2000) (citation omitted). "The inquiry should be objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." *Samuel-Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 403 (3d Cir. 2004). Indeed, courts need not "suspend reality or shelve common sense," but instead "may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin North America, Inc*., 613 F.3d 1058, 1062 (11th Cir. 2010).

Importantly, "we do not aggregate the value of multiple plaintiffs' claims to satisfy the amount in controversy requirement simply because they are joined in a single lawsuit." *Leonard v. Enter. Rent a Car,* 279 F.3d 967, 974 (11th Cir. 2002). "Generally, if no single plaintiff can satisfy the jurisdictional amount, then there is no diversity jurisdiction." *Kirkland v. Midland Mortg. Co.,* 243 F.3d 1277, 1280 (11th Cir. 2001). In *Snyder v. Harris,* 394 U.S. 332 (1969), the Supreme Court held that aggregation is permissible to meet the amount-in-controversy requirement only where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder,* 394 U.S. 332 at 335.[3] "[T]here are situations in which multiple plaintiffs have a unified, indivisible interest in some common fund that is the object of litigation, permitting them to add together, or 'aggregate,' their individual stakes to reach the amount in controversy threshold." *Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1265 (11th Cir.2000). However, "[s]uch a 'common and undivided interest' is uncommon and exists only when a defendant owes an obligation to the group of plaintiffs and not to the plaintiffs severally." *Lutz v. Protective Life Ins. Co.,* 328 F. Supp. 2d 1350, 1361 (S.D. Fla. 2004). And a bright-line

---

[3] S*ee Darden v. Ford Consumer Fin. Co.,* 200 F.3d 753, 756 (11th Cir. 2000) ("[T]he claims for compensatory damages of the individual Plaintiffs here cannot be aggregated to establish the required amount in controversy. …At least one individual plaintiff in a class action must have a damage claim greater than $75,000 for a federal court to have diversity jurisdiction ….").

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, Florida 33130

rule is that "no aggregation of claim-by-claim valuations may be done to reach the jurisdictional threshold if the claims presented are alternative bases of recovery for the same harm."[4]

Here all three FCCPA claims under subsections (7), (9) and (17) are based on the same five emails. Yet statutory damages under the FCCPA are limited to "as the court may allow, but not exceeding $1,000" per individual per *action*. Fla. Stat. § 559.77(2). Merely adding in more subsections does not help any Plaintiff, because each Plaintiff is still only entitled to $1,000 in statutory damages for each email, not $3,000 per count per each of the five Plaintiffs (or a total of $15,000).[5] But even if aggregation were permissible –it is not– that would amount to only $15,000 in statutory damages.

Nor can actual damages be aggregated. Plaintiffs' FCCPA claims under subsections 559.72(7), (9), and (17) are simply three different legal theories of recovery for the same injury. Such claims are not separate and independent claims for relief. Indeed, Plaintiffs' claims under subsections 559.72(7), (9), and (17) rely on the same facts (i.e., Capital One's sending the same five courtesy emails to Plaintiffs) to recover for the same damages (i.e., Plaintiffs' alleged five minutes of wasted time opening the courtesy emails and one hour of lost sleep). The only difference between Plaintiffs' three FCCPA claims is the specific provision allegedly violated. The underlying five emails are the same from one claim to the next. And Plaintiffs do not have a

---

[4] *Jones v. Bradford*, 2017 U.S. Dist. LEXIS 83803, *5 (S.D. Ala. 2017); *see also*, *e.g., SUA Ins. Co. v. Classic Home Builders, LLC*, 751 F. Supp.2d 1245, 1252 (S.D. Ala. 2010) ("if these claims are alternative bases of recovery for the same harm under state law, [the plaintiff] could not be awarded damages for both, and a court should not aggregate the claims to arrive at the amount in controversy"); *D.M.C. Enterprises Inc. v. Best McAllister, LLC*, 2010 U.S. Dist. LEXIS 78849, *2 (S.D. Ala. 2010) ("Each count of the complaint asserts an alternative basis of recovery for the same harm and, therefore, cannot be aggregated for jurisdictional purposes.").

[5] *Spence v. Citicorp Credit Servs., Inc.,* 2017 WL 708742, at *4 (M.D. Fla. Feb. 3, 2017) ("The foregoing provision [Fla. Stat. § 559.77(2)] has been interpreted by numerous courts to limit a plaintiff's claim for statutory damages to $1,000.00 per action, not per violation."), *report and recommendation adopted*, 2017 WL 700552 (M.D. Fla. Feb. 22, 2017).

common and undivided interest in "some common fund" that is the object of litigation as their claims are based on their own respective credit card accounts, which are in turn governed by separate and distinct Customer Agreements. Thus, any duty owed by Capital One to Plaintiffs is distinct, separate, and severable, and is not owed to the Plaintiffs as a collective group.[6] Therefore, the $25,000 amount of actual damages claimed in each of Counts 1, 2, and 3 cannot be aggregated to meet the $75,000 amount-in-controversy requirement prescribed by 28 U.S.C. § 1332(a).[7]

Equally important here is that the jurisdictional amount of $75,000 cannot be based on speculation. *See Bradley v. Kelly Servs., Inc.*, 224 F. App'x 893, 895 (11th Cir. 2007) (affirming dismissal where plaintiff was merely "speculating that her damages would exceed $75,000"). The prohibitions on aggregation and speculation apply to actual damages, punitive damages, attorney's fees, and the value of injunctive relief. *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1280–81 (11th Cir. 2001) (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1267 (11th Cir. 2000)); *Leonard*, 279 F.3d at 973. The value of injunctive or declaratory relief is "the value of the object of the litigation that would flow to the plaintiffs if the injunction were granted." *Leonard*, 279 F.3d at 973. If the monetary value of the requested injunctive relief is "too speculative and

---

[6] *See Lutz v. Protective Life Ins. Co*., 328 F.Supp.2d 1350, 1361 (S.D. Fla. Jun. 14, 2004), *citing to Morrison v. Allstate Indem. Co*., 228 F.3d 1255, 1262 (11th Cir. 2000) (noting that although "'[t]here are situations in which multiple plaintiffs have a *unified, indivisible interest in some common fund* that is the object of litigation, permitting them to add together, or "aggregate," their individual stakes to reach the amount in controversy threshold,' such a "common and undivided interest" is uncommon and exists only when a defendant owes an obligation to the group of plaintiffs and not to the plaintiffs severally."); *see also Morrison*, 228 F.3d at 1264 ("[W]hen multiple plaintiffs assert rights arising from individual insurance policies, their claims are separate and distinct, and accordingly, may not be aggregated.").

[7] *See Mikesell v. FIA Card Servs., N.A*., 936 F.Supp.2d 1327, 1331 (M.D. Fla 2013) (finding that Plaintiff's claim for damages of $15,000 in each count is insufficient to "make it facially apparent that the amount in controversy exceeded $75,000," considering "it is not at all clear that the $15,000 damages in each count can be aggregated, or whether to do such would be double recovery for the same injury simply being prosecuted under separate legal theories.").

immeasurable to satisfy the amount in controversy requirement," the Court need not even address whether the injunctive relief should be aggregated. *Id*.

Aside from claiming the maximum statutory damages, Plaintiffs impermissibly rely solely on speculation as to any amounts for actual damages, punitive damages, attorney's fees, or the value of the requested injunctive relief to stop after hours emails. Indeed, the requested injunctive relief would not appear to be of any monetary value and thus cannot be considered.[8] And there is no indication that the amount of attorney's fees would be sufficient to bring the amount in controversy to the requisite amount. Here, it is a legal certainty that Plaintiffs' claims will not exceed $75,000.  Plaintiffs have failed to present allegations showing their claims meet the $75,000 amount without impermissibly aggregating their individual damages and relying on speculation.[9]

Plaintiffs' failure to meet the $75,000 jurisdictional threshold is clear on the face of the Amended Complaint. Such failure is fatal to Plaintiffs' claim and incurable, as this Court is obligated to ensure this case satisfies its constitutional grant of authority.[10]  Accordingly, the Complaint must be dismissed for lack of subject matter jurisdiction.[11]

## II.     PLAINTIFFS CANNOT ASSERT A VALID FCCPA CLAIM WHERE: (1) FEDERAL AND VIRGINIA LAW GOVERN THE ACCOUNTS; (2) THE

---

[8] *Id.* ("Thus, the injunctive relief, unlike the compensatory and punitive relief, will not be of any monetary value to the class members, and cannot be considered for amount in controversy purposes.").

[9] *See Klempner v. Northwestern Mutual Life Ins. Co.*, 196 F.Supp.2d 1233, 1238 (S.D. Fla. Dec. 17, 2001 ("Multiple plaintiffs cannot in the vast majority of cases aggregate the value of their claims to meet the jurisdictional threshold.")

[10] *Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1422 (11th Cir. 1995); *University of South Alabama v. American Tobacco Co*., 168 F.3d 405, 410 (11th Cir. 1999).

[11] *See Bradley v. Kelly Servs., Inc.*, 224 F. App'x 893, 895 (11th Cir. 2007) (affirming dismissal of complaint for lack of jurisdiction where plaintiff "made general allegations that she suffered damages" but "never quantified these losses with any specific dollar figures" and was merely "speculating that her damages would exceed $75,000"); *Est. of Levine v. QBE First Ins. Agency, Inc.,* 2017 WL 4326693, at *3 (S.D. Fla. Aug. 4, 2017) ("A plaintiff cannot establish subject matter jurisdiction by alleging actual damages of under $4,000, simply by arguing that it *could* obtain punitive damages in excess of $70,000 based on FCCPA and common law tortious interference claims.").

## COURTESY EMAILS ARE NOT ACTIONABLE; AND (3) PLAINTIFFS LACK STANDING.

Plaintiffs' claims should be dismissed even if the Court had jurisdiction. Each of the following grounds serves as an independent basis for dismissal for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). First, the Court should dismiss Plaintiffs' FCCPA claims because the controlling choice of law provision imposing federal and Virginia law governs Plaintiffs' and Capital One's interaction with the Accounts, and Florida's FCCPA statute has no application. Also, Plaintiffs lack standing to pursue an FCCPA claim because they do not have a concrete injury. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (holding that "a bare procedural violation, divorced from any concrete harm" does not confer standing). Moreover, the subject emails are not actionable under the FCCPA because they are not communications made "in the collection of consumer debt," as Capital One was not seeking to collect on the Accounts by sending these emails, because the FCCPA's subsection (17) does not even apply to emails (but only telephone calls), and because Plaintiff has not alleged a pattern of abuse as required by subsection (7).

### A. Federal and Virginia Law Govern the Accounts, Not Florida Law.

The Customer Agreements are dispositive here where at base, Plaintiffs complain about the time and content of Capital One's communications with them about their respective Accounts. The Customer Agreements specifically address Capital One's methods and manner of "Communications" with customers (including email), and further specify that "Statements" would be sent or made available to customers.[12] Thus, Capital One's communications are directly related to the Customer Agreements by their very terms. In turn, communication-based causes of action,

---

[12] "Communications", Exs. 1-5, pp. 4- 5; "Statements", Exs. 1-5, p. 2.

such as Plaintiffs' FCCPA claims, are directly related to the Customer Agreements.[13] And the

Customer Agreements are unambiguous—federal and Virginia law govern the Accounts, not

Florida law.  The Customer Agreements explicitly state in pertinent part:

> **The Law That Applies to Your Agreement**
> **We make decisions to grant credit and issue you a *Card* from our offices in
> Virginia. This Agreement is governed by applicable federal law and by
> Virginia law.**

*See* Ex. 1, p. 5; Ex. 2, p. 5.; Ex. 3, p. 5; Ex. 4, p. 5; Ex. 5, p. 5.

Additionally, Florida law specifically allows choice of law contractual provisions where

there is "a reasonable relation" to the other state. Fla. Stat. § 671.105. Here there is a reasonable

relation to Virginia. Indeed, in this lawsuit Plaintiffs acknowledge Capital One has its principal

place of business in McLean, Virginia. Additionally, the Customer Agreements state Capital One

"make[s] decisions to grant credit and issue [Plaintiffs] a *Card*" from its offices in Virginia. The

Customer Agreements also expressly cover Capital One's email communications with Plaintiffs

concerning the Accounts.

Indeed, Florida Supreme Court precedent demonstrates that Capital One's choice of law

provision governing the Agreement is customary.[14] In fact, choice of law clauses consistently

provide that the agreement be governed, construed, interpreted, or enforced by or in accordance

---

[13] *See Warner v. Goldman Sachs Bank, USA*, 2024 Fla. Cir. LEXIS 1250 at *5 (Fla. Cty. Ct.
Brevard Nov. 4, 2024) (finding that the Utah choice-of-law provision within the Card Agreement
governing plaintiff's credit card applied to the subject email serving as the basis for plaintiff's
FCCPA claim, in that, "the Subject Email notified Plaintiff that his upcoming payment deadline
on the Account was approaching. Thus, the Subject Email indisputably was an Account-related
communication.").
[14] *Tribeca Asset Mgmt., Inc. v. Ancla Int'l, S.A.,* 336 So. 3d 246, 248 (Fla. 2022) (emphasis added)
("Where a contract is clear and unambiguous, it must be enforced pursuant to its plain language."
... Choice of law clauses reflect "[a]n agreement between parties to be bound by the substantive
laws of another jurisdiction.").

with the laws of the State of Florida or another state of the parties' choosing.[15] And federal courts routinely find that choice of law provisions govern statutory torts.[16] So do State Courts. In fact, a Brevard County Court judge recently ruled that a Utah choice of law provision preempted an FCCPA claim based on an alleged prohibited after-hours email: "Thus, Plaintiff's contention that the FCCPA is a 'statutory tort' that is not barred by a non-Florida choice-of-law provision is not persuasive." *See Warner*, 2024 Fla. Cir. LEXIS 1250 at *6-7.

Under Florida's conflict of law rules, "[a]n agreement between parties to be bound by the substantive laws of another jurisdiction is presumptively valid." *Southeast Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 80 (Fla. 2012). Florida courts are to enforce a choice of law provision unless applying the chosen forum's law would contravene a strong public policy of this State. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours Co.,* 761 So.2d 306, 311 (Fla. 2000). Moreover, that public policy must be of sufficient importance and rise above the level of routine policy considerations to warrant invalidation of a party's choice to be bound by the substantive law of another state. *See id.* at 312. As a result, "there are only limited circumstances under which a choice-of-law provision will be invalidated for public policy reasons." *Southeast Floating Docks,* 82 So. 3d at 80. For example, the Supreme Court of Florida determined that the public policy in favor of giving effect to the contracting parties' express intentions outweighed the

---

[15] *See, e.g.*, *Banco Indus. de Venezuela C.A., Miami Agency v. de Saad*, 68 So. 3d 895, 898 (Fla. 2011) ("This contract shall be governed solely and exclusively by the laws of the State of Florida, specifically those of Dade County, Florida."); *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 308 n.2 (Fla. 2000) (the agreement "shall be governed and construed in accordance with the laws of the State of Delaware").

[16] *Arndt v. Twenty-One Eighty-five, LLC*, 448 F. Supp. 3d 1310, 1317 (S.D. Fla. 2020) ("Plaintiffs' [FCCPA] allegations directly relate to Defendants' obligations, duties, and performance under the Finance Agreement. As such, the Finance Agreement's choice-of-law provision precludes Plaintiffs' state-law claim under the FCCPA."); *see also Martin v. Creative Mgmt. Grp., Inc.*, 2013 WL 12061809, at *9 (S.D. Fla. July 26, 2013) ("Where the parties agreed to a choice-of-law provision in their contract, claims brought under the statutes of other states are generally inapplicable." (citations omitted)).

public policy inherent to an entire legislative scheme protecting consumers against usurious interest rates.[17] In all cases, "the party seeking to avoid the choice of law provision has the burden to show that application of the foreign law contravenes a strong public policy of Florida."[18] It is insufficient that the application of the foreign law may cause a different result than an application of Florida law.[19]

In their Amended Complaint, Plaintiffs claim the Virginia choice-of-law provision is ambiguous because it does not state that Virginia law *exclusively* applies. Amd. Compl. ¶¶ 38, 99, 160 [DE 12]. This argument is unpersuasive and contradicts standard principles of contract interpretation. The Virginia choice-of-law provision clearly states, "This Agreement *is governed* by applicable federal law and by Virginia law." "It is well established that when the parties to a contract have indicated their intention as to the law which *is to govern*, it will be governed by such law in accordance with the intent of the parties." [20] These Customer Agreements do not contain any permissive language that would allow a reasonable interpretation otherwise, such as the terms "may," "can," or "including," nor do they contain any other qualifier to suggest they can reasonably be construed as open-ended. Words contained in an agreement should be given "a

---

[17] *See Morgan Walton Props., Inc. v. Int'l City Bank & Trust Co.*, 404 So.2d 1059, 1062 (Fla. 1981) ("The 'public policy' against usury ... was not so strong as to overcome the policy in favor of giving effect to the expressed intentions of contracting parties, even though as a factual matter the designation may indeed have been motivated by a desire to 'evade' Florida's usury law.") (discussing *Cont'l Mortg. Investors v. Sailboat Key, Inc.*, 395 So.2d 507, 512–13 (Fla. 1981)).

[18] *Mazzoni Farms,* 761 So. 2d at 311; *see also Delhomme Indus., Inc. v. Houston Beechcraft, Inc.,* 669 F.2d 1049, 1058 (5th Cir. 1982) ("A choice of law provision in a contract is presumed valid until it is proved invalid. The party who seeks to prove such a provision invalid because it violates public policy bears the burden of proof.").

[19] *See Arndt*, 448 F. Supp. 3d at 1320 ("Stated differently, Plaintiffs assert the choice-of-law provision violates Florida public policy simply because a different result may be reached by applying Illinois law. The Court will not invalidate the choice-of-law provision on this ground.").

[20] *Tribeca Asset Mgmt., Inc. v. Ancla Int'l, S.A.,* 336 So. 3d 246, 248 (Fla. 2022) (emphasis added) ("Where a contract is clear and unambiguous, it must be enforced pursuant to its plain language." ... Choice of law clauses reflect "[a]n agreement between parties to be bound by the substantive laws of another jurisdiction.").

natural meaning or the meaning most commonly understood in relation to the subject matter and

the circumstances." *Granados Quinones v. Swiss Bank Corp. (Overseas) S.A.*, 509 So.2d 273, 275

(Fla. 1987), *quoting Sheldon v. Tiernan*, 147 So.2d 167, 169 (Fla. 2d DCA 1962). Here, the

provision uses the word "is," which is the third person singular present indicative of "be," meaning

to exist or have a certain quality. By using "is" and not "may be," "can be," or even "should be,"

the provision leaves no ambiguity that only federal or Virginia law apply.

Moreover, enforcement of the binding choice of law provision that Plaintiffs agreed to does

not contravene any strong Florida public policy. Rather, as the *Warner* court recently held, Florida

has a strong public policy favoring freedom of contract, which courts give great deference to:

> The Court does not agree that Utah law contravenes a strong public policy in
> Florida such that it need not enforce the choice-of-law provision in the Agreement.
> … Freedom of contract, on the other hand, is an important consideration in Florida
> jurisprudence, and a decision by this Court adopting Plaintiff's public policy
> arguments would instead contravene Florida's respect for the freedom of contract.

*Warner,* 2024 Fla. Cir. LEXIS 1250 at *5-6.

Thus, the standard is that Florida courts will enforce a choice-of-law provision unless

applying the chosen forum's law would contravene a strong public policy of this State. *See*

*Mazzoni Farms, Inc. v. E.I. DuPont De Nemours Co.*, 761 So. 2d 306, 311 (Fla. 2000). In short,

Plaintiffs have not met their burden in showing that Virginia law would contravene a strong Florida

public policy.[21] Plaintiffs cannot identify any Virginia law that would contravene a strong public

policy of Florida. In truth, it was Plaintiffs who agreed to be bound by Virginia law in exchange

---

[21] *See id.* at 306, 310–11 ("[C]ourts have uniformly enforced choice-of-law provisions without
requiring the parties to brief the law of the chosen forum. ...Moreover, it is incumbent upon the
party seeking to avoid enforcement of the provision to show that the foreign law contravenes public
policy of the forum jurisdiction. ... In short, DuPont is neither required to brief the substantive law
of Delaware nor obliged to demonstrate conflict between Delaware and Florida law; on the
contrary, the choice-of-law provision is presumptively valid and it is the nurseries' burden to
demonstrate why it should not be enforced.").

for opening their respective Accounts with Capital One. And Virginia law – which would otherwise not apply to a Florida resident, and to which Florida owes full faith and credit – has its own consumer remedies Plaintiffs may avail themselves of should they have a good faith claim under those laws. Plaintiffs cannot now escape the terms of their respective Customer Agreements simply because they desire to avail themselves of Florida remedies.

Therefore, as the Accounts are governed by choice of law provisions imposing federal and Virginia law only, any claim arising out of the Customer Agreements (including a claim related to emails)[22] can only be rooted in federal or Virginia law. Accordingly, Plaintiffs' claims for purported FCCPA violations – claims arising exclusively under Florida law – should be dismissed.[23] Other Florida statutory claims asserted under similar circumstances have been dismissed in favor of enforcing choice of law provisions removing Florida jurisdiction.[24] Indeed,

---

[22] To the extent Plaintiffs rely on arbitration cases to argue that the Agreement must bear a "significant relationship" to the Agreement, those forum-selection clause cases have their own unique standard that does not apply to other contract clauses such as jury waivers and choice of law provisions. *See, e.g., Tribeca Asset Mgmt., Inc. v. Ancla Int'l, S.A.*, 336 So. 3d 246, 248 (Fla. 2022) (explaining the difference between a choice-of-law provision and a forum-selection clause, reversing Third District's opinion conflating the two). *See also, Sandoval v. Wolfe,* 2017 WL 244111, *3 (S.D. Fla. Jan. 19, 2017); *Levinson v. Green Tree Servicing, LLC*, 2015 WL 1912276, *2 (M.D. Fla. Apr. 27, 2015).

[23] *See Arndt*, 448 F. Supp. 3d at 1317-18 (dismissing FCCPA claim because plaintiff's account agreement included an Illinois choice of law provision and rejecting argument that the provision violated public policy); *Locicero v. Intrust Bank, N.A.*, 2018 WL 4374908, *8 (S.D. Fla. Sept. 13, 2018) (referencing application of Kansas choice of law provision to purported FCCPA claim made by Florida resident after dismissing FCCPA claim on other grounds).

[24] *See Southeast Floating Docks, Inc.*, 82 So. 3d at 81 (holding Florida's offer of judgment statute inapplicable where the parties agreed to be bound by the substantive laws of Michigan); *Sokolow v. Damico*, 2019 WL 7188563, *6 (S.D. Fla. Dec. 26, 2019) ("Having concluded that Pennsylvania law provides the rule of decision, the Court must grant Defendants' motion for summary judgment as to the Florida statutory claims." (citations omitted)); *Pastor v. Union Cent. Life Ins. Co.*, 184 F. Supp. 2d 1301, 1308 (S.D. Fla. 2002), *aff'd*, 128 Fed. Appx. 100 (11th Cir. 2005) (dismissing complaint for violation of Florida statute because New Jersey law governed plaintiff's claims and thus, "Florida law is inapplicable to this dispute"); *Renslow v. Capital One Bank (USA), N.A.*, 2009 WL 10666842, at *6 (S.D. Fla. Jan. 8, 2009), *aff'd sub nom.*, 343 F. App'x. 457 (11th Cir. 2009) (plaintiffs' FDUTPA claims barred by parties' choice of Virginia law); *Hardee's Food Sys., Inc. v. Bennett*, 1994 WL 1372628, *5 (S.D. Fla. Mar. 24, 1994) (choice-of-law provision in parties'

a Capital One choice of law provision imposing Virginia law, like the one at issue here, has been recently applied to dismiss Texas statutory claims.[25]

Therefore, Plaintiffs have not and cannot state a claim against Capital One for purportedly violating a Florida statute concerning the timing of communications about their accounts, where the operative Customer Agreements governing their Accounts explicitly provide that federal and Virginia law exclusively apply.

**B.** **The Subject Emails Are Not Actionable Under the FCCPA.**

Plaintiffs' FCCPA claims should also be summarily dismissed because the subject courtesy emails are not actionable under the FCCPA as they were not made in furtherance of collecting consumer debt. Moreover, Plaintiffs' FCCPA claim brought under §559.72(17) must also be dismissed because, by its terms, subsection 559.72(17) applies only to telephone calls. Also, Plaintiffs' FCCPA claim brought under subsection 559.72(7) must be dismissed because Plaintiffs fail to adequately allege a pattern of abuse or harassment.

> **1.** *The Subject Courtesy Emails Are Not Actionable Under the FCCPA Because They Are Not Communications Made in Furtherance of "Collecting Consumer Debt."*

Plaintiffs assert FCCPA claims pursuant to Sections 559.72(7), (9), and (17), which provide that, "In collecting consumer debts, no person shall" …

> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family;
> …
> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist;

---

contract stating that North Carolina law governed defeated defendants' fraud claims brought under FDUTPA).

[25] *See Young v. Capital One Bank USA, N.A.*, 2024 WL 780415, *6-7 (E.D. Va. Feb 26, 2024) (Texas statutory claim could not be maintained where the contractual choice of law provisions required application of Virginia law).

…

(17) Communicate with the debtor between the hours of 9 p.m. and 8 a.m. in the debtor's time zone without the prior consent of the debtor.

Fla.Stat. §§ 559.72(7), (9), and (17).

Thus, per § 559.72, a communication must be made in furtherance of "collecting consumer debt" to be actionable under the FCCPA. However not all communications between a debt collector and a debtor are covered by the debt collection statutes, and communications which are informational in nature are outside the application of the debt collection statutes.[26] In order "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *See Grden v. Leikin Ingber & Winters, PC*, 643 F.3d 169, 173 (6th Cir. 2011); *Hurtubise v. P.N.C. Bank, N.A.*, 2015 WL 3948192, at *4 (Fla. Cir. Ct. Jan. 5, 2015). The trial court may determine whether a communication is sent in connection with collection of an existing debt as a matter of law pursuant to the FCCPA. *See Read v. MFP, Inc.,* 85 So.3d 1151, 1153 (Fla. 2d DCA 2012). But even viewing the facts and the communications attached to the Complaint as Exhibits A through E in the light most favorable to Plaintiffs, Plaintiffs cannot show that the emails were made to collect a consumer debt.

Plaintiffs primarily claim that the emails were made in connection with collecting a debt simply because they contained the account balances, the minimum payment amounts, and the forthcoming payment due dates. *See* Amd. Compl., ¶¶ 17, 51, 78, 112, 139 [DE 12]. However, the emails are purely informational and intended to benefit the cardholder by notifying them that their monthly periodic account statements required by the Truth in Lending Act and its implementing regulations are available and payment can be made through Capital One's online banking

---

[26] *See Parker v. Midland Credit Mgmt., Inc*., 874 F.Supp.2d 1353, 1356–57 (M.D. Fla. 2012). "[T]he purpose and intent of the FCCPA, like the FDCPA, is to eliminate abusive and harassing tactics in the collection of debts." *Trent v. Mortgage Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1361 (M.D. Fla. 2007), *aff'd,* 288 Fed. Appx. 571 (11th Cir. 2008).

platform.[27] Although the emails state the payment due date and minimum payment (the alleged "debt"), such notice cannot be construed as an attempt to collect a debt because for all but one Account the debt (minimum payment) is not yet past due and, in any event, providing the due date is a requirement of Regulation Z. *See* 12 C.F.R. § 1026.7(b)(11). Stating the statutorily-required date on the email notifying the customer of the availability of their statutorily-required statement cannot give rise to FCCPA liability.

For the same reason, Plaintiffs' additional reliance on boilerplate in their respective emails that "this is an attempt to collect a (consumer) debt (claim)," "[a]ny information obtained will be used for that purpose," "[t]his communication is from a debt collector," "make a payment now to avoid a late fee," and "[y]our payment is due tomorrow"[28] do not change the nature of the communications or establish a violation. All but the last email shows that the payments are not yet delinquent, and the disclosures themselves state they apply only "[i]f your account is past due" and if Plaintiffs lived in specified states other than Florida (i.e., Connecticut, District of Columbia, Hawaii, Massachusetts, New York City, North Carolina, or Oregon). Amd. Compl. Ex. A–E [DE 12-1, p. 3; DE 12-2, p. 3; DE 12-3, p. 3; DE 12-4, p. 3].[29] Even so, federal courts have found that such language identifying a communication as an "attempt to collect a debt" is not dispositive and

---

[27] Plaintiffs fail to mention that they voluntarily consented to receive the subject account statement emails when they enrolled in paperless communications and that they could have unsubscribed for emails with one click, in that each email states: "Unsubscribe with one click if you no longer want to receive this account alert." [DE 12-1, p. 3 of 4; 12-2, p. 3 of 4; 12-3, p. 3 of 4; 12-4, p. 3 of 4, 12-5, p. 3 of 4] (emphasis in original)]. These alerts are a valuable service for consumers who desire to get their statements and other documents online instead of in the mail.

[28] Amd. Compl. ¶¶ 15–16, 76-77, 110-111, 137-138 & Ex. A–E [DE 12-1, p. 3; DE 12-2, p. 3; DE 12-3, p. 3; DE 12-4, p. 3; DE-12-5].

[29] And while the last email, Exhibit E sent to Plaintiff Oliveria, does not contain this limiting language [DE-12-5, p. 3 of 4], that courtesy email also does not contain any language stating that the communication is from a "debt collector" or "an attempt to collect a debt." *See* Amd. Compl. Ex. E [DE 12-5, p. 3 of 4].

does not automatically trigger consumer law protections.[30] Despite Plaintiffs' attempt to portray the communications otherwise, the emails do not contain any forceful, aggressive, or intimidating language to induce Plaintiffs to make a payment.  The communications are purely informational and in some instances, provide a payment link as a convenience for customers who have voluntarily enrolled in paperless statements and, logically, also make online payments.[31] Accordingly, the emails are not actionable under the FCCPA, and Plaintiffs' FCCPA claims should be dismissed with prejudice.

### 2. Plaintiffs' Claims Pursuant to Section 559.72(17) Must Be Dismissed Because the Statute's Plain Language States It Applies Only to Telephone Calls, Not Emails.

Additionally, Plaintiffs' reliance on Section 559.72(17) is faulty because subsection (17) applies only to telephone calls and not emails based on the plain language of subparts (a) and (b), which state, "[i]n collecting consumer debts, no person shall":

> (17) Communicate with the debtor between the hours of 9 p.m. and 8 a.m. in the debtor's time zone without the prior consent of the debtor.
> a)      The person may presume that the time a **telephone call** is received conforms to the local time zone assigned to **the area code of the number called**, unless the person reasonably believes that the debtor's **telephone** is located in a different time zone.
> b)      If, such as with **toll-free numbers**, an **area code** is not assigned to a specific geographic area, the person may presume that the time a **telephone call** is received conforms to the local time zone of the debtor's last known place of residence, unless the person reasonably believes that the debtor's **telephone** is located in a different time zone.

Fla. Stat. § 559.72(17) (emphasis added).

As the above-emphasized terms show, subsections (a) and (b) reference only telephone calls. Under the principle of statutory construction, *expressio unius est exclusio*

---

[30] *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 386 n.3 (7th Cir. 2010) ("The letter bore a disclaimer identifying it as an attempt to collect a debt, but this does not automatically trigger the protections of the FDCPA, ….").

[31] The courtesy emails relating to Plaintiff Barker's and Plaintiff Shapiro's account do not contain any link to make a payment. *See* Amd. Compl., Exs. A, C [DE 12-1, DE 12-3].

*alterius* (the negative implication canon), the mention of one thing implies the exclusion of the other. *Gabriji, LLC v. Hollywood E., LLC*, 304 So. 3d 346, 351 (Fla. 4th DCA 2020) (quoting *Brown v. State*, 263 So. 3d 48, 51 (Fla. 4th DCA 2018)). As the sub-provisions of § 559.72(17) do not expressly include email communications (while also specifically referencing telephone calls), section 559.72(17) does not apply to emails under basic statutory interpretation. This interpretation is also facially supported by the intent of the Florida Legislature when enacting the FCCPA, *i.e.,* to curb *egregious* debt collection practices.[32] Practically speaking, a telephone call can intrude upon a debtor's privacy between 9 p.m. to 8 a.m. and lure a debtor into a harassing conversation when they otherwise should be able to avoid unwanted phone calls. The same is not true for an email that the debtor generally must affirmatively sign up for, and then access and open to review, as with a letter on paper.[33] Moreover, the plain language of the statute is very clear that "section 559.72(17) of the FCCPA does not apply to email communications." *Warner,* 2024 Fla. Cir. LEXIS 1250, *14. Section 559.72(17) specifically prohibits "debt-collection communication in the form of telephone calls" between 9 p.m. and 8 a.m. *Id.* at *15. "The amendment of the statute in 2010 to include these very clear and repeated references to 'a telephone call,' 'debtor's telephone' and 'toll-free numbers' in its prohibitions against communicating with debtors during the prohibited time period makes sense given the

---

[32]  *Bank of Am., N.A. v. Siefker,* 201 So. 3d 811, 816 (Fla.4th DCA 2016) ("The FCCPA prohibits egregious debt collection practices and provides legal remedies to protect consumers from harassing collection efforts.").

[33] *Collado v. 450 N. River Drive, LLC*, 2023 U.S. Dist. LEXIS 112066, *14 (S.D. Fla. June 29, 2023) ("[T]he parties agree that notice via email and United States mail are appropriate. … The Court agrees with Defendants that text messages are intrusive, may cause unwanted monetary charges to the recipients, and are not necessary in the circumstances of this case.").

proliferation of email after the FCCPA's original enactment (and subsequent amendments in 1997 and 2010)." *Id.* at *15-16. [34]

Finally, Plaintiffs allege each email caused their cellular phone "to emit an audible sound" that intruded upon their seclusion, invaded their privacy, and caused them to "waste time" by expending "approximately five (5) minutes of time retrieving" their phones to review the communications and lose "approximately one (1) hour of sleep." Amd. Compl. ¶¶ 22-30, 56-64, 83-91, 117-125, 144-152 [DE 12].  However, Plaintiffs' allegations are insufficient to state a claim under the FCCPA because in reality, Plaintiffs' phone settings are entirely within their control.[35]

### 3. Plaintiffs' Claim Under Section 559.72(7) Must Be Dismissed Because Plaintiffs Fail to Adequately Allege a Pattern of Abuse or Harassment.

Plaintiffs add a claim under Section 559.72(7), which states, "In collecting consumer debts, no person shall … [w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Plaintiffs allege a "natural consequence of communicating with Plaintiffs between 9:00 PM and 8:00 AM, without first obtaining consent directly from Plaintiffs" is that Plaintiffs would be "harassed and/or oppressed." Amd. Compl. ¶ 184 [DE 12]. Plaintiffs abandon the first prong in subsection 559.72(7) regarding "frequency" of debt

---

[34] *See id* at 17 ("The Court finds that the receipt of an email communication is no different than receipt of physical mail, which is silently delivered to a mailbox and the recipient elects when to retrieve it from the mailbox. As such, this Court finds that Section 559.72(17) does not apply to email communications.").

[35] *Warner,* 2024 Fla. Cir. LEXIS 1250, at *11 ("Plaintiff's contention that he received an audible notification when he received the Subject Email only serves to confirm that his phone settings, which he selected, not GS Bank, were the cause of his annoyance and aggravation. Thus, Plaintiff himself (or whoever modified his mobile device settings to receive visual and audible notifications), and not GS Bank, is the source of this purported 'annoyance and aggravation' that he suffered when he received the Subject Email.").

communications, and instead rely on the second prong regarding "other conduct." Amd. Compl. ¶ 181 [DE 12]. Essentially, Plaintiffs proffer that Capital One's single courtesy email to each Plaintiff is "harassing" or "abusive" simply because it was sent after hours.[36] However, Plaintiffs fail to state a claim under Section 559.72(7) because even a single after hours email is insufficient to constitute a "pattern" of harassing conduct as a matter of law.

Courts apply the same legal standards to both Section 559.72(7), Florida Statutes, and its FDCPA counterpart, 15 U.S.C. § 1692d(5). *Garry v. Barlow*, 2022 U.S. Dist. Lexis 93808, *9 (M.D. Fla. 2022). "[A]ctionable harassment or annoyance turns on the volume and pattern of calls made, irrespective of the substance of the messages." *Id.* at *9-10, quoting *Waite v. Fin. Recovery Servs., Inc.*, 2010 U.S. Lexis 133438, *2 (M.D. Fla. Dec. 16, 2010). "There is no bright-line rule for determining whether a communication or other conduct is harassing, so a debt collector's actions 'must be evaluated as a whole under the circumstances." *Gonzalez v. Ocwen Loan Servicing, LLC*, U.S. Dist. LEXIS 153480, *7 (M.D. Fla. 2018). In analyzing a motion to dismiss under § 559.72, courts consider several factors including (1) the volume and frequency of attempts to contact the debtor, (2) the volume and frequency of contacts with the debtor, (3) the duration of the debt collector's attempted communication and collection, (4) the debt collector's use of abusive language, (5) the medium of the debt collector's communication, (6) the debtor's disputing the debt or the amount due, (7) the debtor's demanding a cessation of the communication, (8) the debt collector's leaving a message, (9) the debt collector's calling at an unreasonable hour, (10) the debt collector's calling the debtor at work, (11) the debt collector's threatening the debtor, (12) the debt collector's lying to the debtor, (13) the debt collector's impersonating an attorney or

---

[36] *See*, *e.g., O'Guin v. Webcollex, LLC*, 2021 U.S. Dist. LEXIS 147670, *2 (M.D. Fla. Aug. 6, 2021) ("courts have generally held that one or two phone calls a day is not sufficient."); *Harrington v. RoundPoint Mortg. Servicing Corp.*, 290 F. Supp. 3d 1306, 1319-21 (M.D Fla. 2017) (concluding an average of 23 calls per month for roughly a year was not harassing).

a public official, (14) the debt collector's contacting a friend, co-worker, employee, employer, or family member, and (15) the debt collector's simulating or threatening legal process. *Leahy-Fernandez v. Bayview Loan Serv'g, LLC*, 159 F. Supp. 3d 1294, 1304-05 (M.D. Fla. 2016). Overall, in gauging a harassment claim under the FCCPA, Florida courts have considered "not only the frequency of the calls but also the legitimacy of the creditor's claim, the plausibility of the debtor's excuse, the sensitivity or abrasiveness of the personalities and all other circumstances that color the transaction." *Barlow*, 2022 U.S. Dist. Lexis 93808, at *11, quoting *Story v. J.M. Fields, Inc*., 343 So. 2d 675, 677 (Fla. 1st DCA 1977).

Here, Plaintiffs assert a claim for harassment under Section 559.72(7) based on a single courtesy email sent after hours by Capital One to each Plaintiff. Obviously, Plaintiffs do not allege high volume or frequency. Nor do Plaintiffs allege the single courtesy emails contained any abusive or threatening language, were sent despite a demand by Plaintiffs to cease communication, or that they simulated or threatened legal process. Plaintiffs do not allege that Capital One sent the subject courtesy emails to their family or friends, or that Capital One attempted to collect an illegitimate "debt." Aside from Plaintiffs' allegation of a single, after hours courtesy email, Plaintiffs can point to no pattern of harassing or abusive conduct by Capital One. This Court should dismiss Plaintiffs' claims under Section 559.72(7) with prejudice.

## C. **Plaintiffs Have Not Alleged a Concrete Injury As Is Required for Standing.**

Federal courts can only hear "Cases" or "Controversies." U.S. Const. art. III, § 2. From that limitation, the standing doctrine grew. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court." *Id.* And in the process, standing ensures courts respect the separation-of-powers boundaries set out in the Constitution. *Clapper v. Amnesty International USA*, 568 U.S. 398, 408 (2013). To have standing, every plaintiff must show injury, causation, and

redressability. *Lujan v. Defenders of Wild Life*, 504 U.S. 555, 560-61 (1992). "But those three simple words are sometimes trickier to apply than it might seem." *Daisy, Inc. v. Mobile Mini, Inc.,* 489 F. Supp. 3d 1287, 1291 (M.D. Fla. 2020). And "[t]he difficulty is sometimes most apparent when it comes to the first and foremost of standing's three elements —injury in fact. *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Actionable injury in fact means plaintiff experienced "an invasion of a legally protected interest." *Id*. This injury must be (1) "concrete and particularized" and (2) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Daisy, Inc*., 489 F. Supp. 3d at 1291 (quoting *Lujan*, 504 U.S. at 560). An injury is concrete if it is "*de facto*" (i.e., "it must actually exist" and be "real," "not 'abstract'"). *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548 (citations omitted)). The "bare procedural violation" of a statute is not enough, even if Congress prescribed a cause of action. *Spokeo*, 136 S. Ct. at 1549. In other words, the Supreme Court "rejected the premise ... that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Frank v. Gaos*, 139 S. Ct. 1041, 1045, 203 L.Ed.2d 404 (2019) (quoting *Spokeo*, 136 S. Ct. at 1549).

In analyzing a sole junk fax received by email (which allegedly wasted one minute of time), Judge Sheri Polster Chappell found one minute of wasted time too insignificant to even be addressed by historical common law causes of action:

> … But the quality of harm—not the counting of seconds—decides concreteness.
> …
> In short, Daisy's alleged harm for one minute of wasted time resembles no historical cause of action. Rather, this is "the kind of fleeting infraction upon personal property that tort law has resisted addressing." *See Salcedo*, 936 F.3d at 1172. And it is "more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face" than a harm conferring Article III standing.

*Daisy, Inc.,* 489 F. Supp. 3d at 1292, 1295.

The other, second aspect of the *Spokeo* analysis is legislative judgment, which the *Daisy* Court looked at regarding a junk fax delivered by email. The *Daisy* Court noted that, "the [federal]

statute prohibits unwanted ads sent from a fax machine, computer, or other device to a fax machine," and noted, [w]hile Congress could have extended that prohibition to faxes no matter how they are received, it did not," "[s]o there is no indication from the statutory text that Congress sought to protect against the harm of wasted time spent reviewing faxes received by e-mail." *Id.* at 1295.

Of course, here the "legislature" at issue for the FCCPA is the Florida Legislature. And as discussed above, emails are nowhere mentioned in § 559.72(17) – only phone calls. As the *Daisy* Court noted, a fax that is delivered by email "did not deprive Daisy of using its fax machine or computer." *Daisy, Inc.,* 489 F. Supp. 3d at 1294. As recently as May 2024, the Middle District reaffirmed the line of cases in this district holding that the mere receipt of a junk fax through email does not cause an injury in fact, and determined *Daisy* remains persuasive for its holding that "one wasted minute" spent reviewing an email is insufficient to establish a concrete injury.[37] So too, then, should this Court find that Plaintiffs' amended claim from a wasted one minute to now that they wasted five minutes of time, is too insignificant to constitute a concrete injury.

WHEREFORE, for the foregoing reasons and authorities, Defendant, CAPITAL ONE, N.A., requests that this Court grant this Motion to Dismiss with prejudice the Amended Complaint, award it its fees and costs pursuant to applicable statutes or contract, and grant all further relief the Court deems just and proper.

---

[37] *Marc Irwin Sharfman M.D. P.A. v. Precision Imaging St. Augustine, LLC*, 2024 WL 3103671, *12 (M.D. Fla. May 23, 2024) (distinguishing *Drazen v. Pinto,* 74 F.4th 1336 (11th Cir. 2023), a TCPA case involving a text message, and stating that: "The undersigned agrees with the line of cases in this district holding that the mere receipt of a fax through an online fax service [i.e., by email] does not cause an injury in fact."), adopting R&R, 2024 WL 4460209, at *2 (M.D. Fla. Aug. 2, 2024) (Berger, J.). *See Heres v. Medicredit, Inc.,* 2024 WL 3291738, at *11 (S.D. Fla. July 3, 2024) (distinguishing *Drazen* when addressing an FDCPA claim based on a mailed letter).

Respectfully submitted,

*/s/ Michael D. Starks*
ANDREW KEMP-GERSTEL
Florida Bar No. 0044332
Email: akg@lgplaw.com
Secondary Email: mkv@lgplaw.com
MICHAEL D. STARKS
Florida Bar No. 0086584
Email: mds2@lgplaw.com
Secondary Email: sck@lgplaw.com
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, Florida 33130
Telephone: (305) 379-0400
Facsimile: (305) 379-9626

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this **23rd** day of January, **2025**, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Michael D. Starks* _____
MICHAEL D. STARKS